IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SYDNEY WATSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. _____ |
| v. | § | |
| | § | |
| BLAZE MEDIA LLC, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff Sydney Watson files this Complaint against Defendant Blaze Media LLC ("The Blaze" or "Defendant"), and would respectfully show the Court as follows:

## SUMMARY OF ACTION

1.      Ms. Watson has suffered injuries and the derailment of her multi-million-dollar career in conservative commentary as a result of her former employer, Defendant The Blaze, creating and tolerating a hostile work environment and allowing sexual harassment, retaliation, and discriminating against her on the basis of her sex and religion. The Blaze's conduct was continuing, pervasive, and appalling, particularly in light of The Blaze's representation to its audience of largely conservative Americans that it stood for solid traditional values. The Blaze, founded and run by famous conservative commentator Glenn Beck, told its audience that it protected traditional values and practiced integrity, and this was part of the reason Ms. Watson trusted her career to it. But the Blaze instead opted to cater to the demands, tantrums, and misbehavior of another young rising star, a male one who – long after Ms. Watson had been terminated for complaining and demanding justice – was finally fired based on allegations that he physically assaulted and manhandled at least one other female The Blaze employee. Much of the abuse was perpetrated by this individual, Elijah Schaffer, but Ms. Watson's claim also implicates officers of The Blaze not interceding to correct the

manifest problems that they created, that occurred in front of them, or that were brought directly to their attention and to which they failed to act promptly, reasonably, and as required by law. Ms. Watson complained of the misconduct continually from December 2021 to August 2022 to various personnel at The Blaze, including but not limited to The Blaze CEO Tyler Cardon. Mr. Cardon and The Blaze did nothing to address the grievous misconduct, totally abdicating both their legal responsibilities to Ms. Watson and their moral responsibilities to Ms. Watson and as well as The Blaze's own loyal audience to the point that CEO Tyler Cardon, who should have protected Ms. Watson's rights and the integrity of the program, asked Ms. Watson to "get Mr. Schaffer to stop talking about dicks so much" on the show. The conduct set forth below was based upon Ms. Watson's gender and her religious beliefs and violated both the law, the company's purported procedures and policies, as well as the principles The Blaze and Mr. Beck represented to their audience.

## PARTIES

2.      Plaintiff Sydney Watson is an individual residing in Denton County, Texas. The last three digits of her social security number are 623, and the last three digits of her driver's license number are 357.

3.      Defendant Blaze Media LLC is a Texas corporation doing business in Irving, Texas and may be served through its registered agent, CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201.

## VENUE

4.      Venue is proper in the Norther District of Texas in accordance with 28 U.S.C. §1391 (b)(2) because Dallas County, which falls in the Dallas Division of the Northern District, is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

## JURISDICTION

5.      The Court has jurisdiction over this matter in accordance with 28 U.S.C. §1331 because claims herein arise under federal law.

## SUMMARY OF FACTS

6.      Plaintiff Sydney Watson ("Ms. Watson" or "Plaintiff") is a promising young voice in the conservative commentary space with – prior to this – no limits to her potential for advancement.

7.      After she gained prominence as a YouTuber, The Blaze saw her talent and demonstrated her worth by offering her a multi-year agreement that would pay Ms. Watson significant amounts. The maximum value of the agreement is approximately $1,275,000, most of which Ms. Watson will not be paid because of the Blaze's misconduct.

8.      But the pay was only one factor in Ms. Watson choosing The Blaze over other opportunities.

9.      The Blaze represented itself as an incubator of talent that helped accelerate the careers of such conservative commentary superstars as Dana Loesch and Tomi Lahren.

10.     Further, The Blaze represented itself as living the moral values that its talent, including Glenn Beck, preached to its audience.

11.     Based upon its representations, Ms. Watson expected to be part of an environment that would allow her to grow and develop but that would also treat her (and others) with respect and dignity. Sadly, that did not happen.

12.     Ms. Watson was to co-host a show with Elijah Schaffer.

13.     Ms. Watson and Mr. Schaffer began production of *You Are Here* ("YAH") on September 9, 2021.

14.     YAH was an internet-based interview show centering on politics and culture that streamed on The Blaze and that was supported by subscriptions. It was not to be a sexually explicit show, nor was it intended to be actively misogynistic.

15.     Ms. Watson is informed and believed, and on that basis alleges, that both she and Mr. Schaffer were subject to the same general employment terms, though not necessarily pay and benefits.

16.     The Agreement between The Blaze and Ms. Watson provided that The Blaze would be deeply involved in every aspect of the show and approved its content:

> 2. _Programs_. The "Programs" shall refer to the following, including each episode thereof:
> (a)an episodic audio-video series consisting of daily news and commentary with Talent as co-host. The title and format of the Programs and underlying concepts related to each Program are subject to Company approval, in its sole discretion. Each episode of the Programs shall be at least forty-four (44) minutes in length, excluding commercial breaks and depending on the Network clock requirements, as determined by Company in its sole discretion, exclusively for BlazeTV subscribers and podcast listeners, or as otherwise determined by Company in its sole discretion.
> (b)The Program shall consist of at least five (5) episodes per week for a minimum of forty-eight (48) weeks per contract year, for a minimum of two hundred forty (240) episodes per contract year.
> (c)Each episode of the Programs shall be written collectively by Talent and the designated co-host. Other persons, such as guests (as reasonably approved by Company, and subject to securing applicable clearances), may appear on any episodes of the Programs. Company shall have the reasonable right to approve or reject each episode and the final content included in each episode of the Programs and any related materials (such as promotional clips).
> 3. _Production of Programs_. Company shall produce (including via any third-party production company) the Programs at Company's sole cost and expense, and agrees to use reasonable efforts to expediently designate a producer for the Programs to be approved by Talent, such approval not to be unreasonably withheld, (though Talent and Company agree that said producer may also work on Company projects or initiatives other than the Programs, so long as said work does not materially interfere with producer's ability to effectively produce Talent's Programs). The Programs are expected to be filmed in the greater Dallas, Texas, metropolitan area;

---

**COMPLAINT**                                                                 **PAGE 4**

*however, some episodes of the Programs may be filmed in other locations as and when mutually agreed by Talent and Company. Talent will be reimbursed for any preapproved travel expenses incurred by Talent at the request of Company for such productions outside of Dallas.*

17.    YAH was taped on-set at The Blaze's studios in Irving, Texas under the direct supervision of The Blaze management and employees.

18.    Paragraph 1 of the general terms of the Agreement between The Blaze and Ms. Watson requires that the talent comply with direction and The Blaze's rules:

> **<u>Services</u>.** *Talent will render the Services in connection with this engagement to the best of Talent's ability, and subject to Company's direction and control. Talent shall abide by all reasonable, rules, regulations and requests of Company in the performance of the Services hereunder.*

19.    The show was initially successful and was growing its audience as hoped. However, Mr. Schaffer's persona on the show became increasingly aggressive and soon began to veer into outright misogyny. He appeared to enjoy the intimidation factor that his physical size gave him with respect to Ms. Watson. The choice of guests compounded Ms. Watson's growing discomfort with the anti-female tone of the show and the off-air interactions with her co-host.

20.    On December 3, 2021, notorious bigot Nick Fuentes appeared on YAH. He was grossly misogynistic, and most troubling was how this appeared to be condoned by Mr. Schaffer. It was at about this time that the environment on the production began to become notably more hostile not merely to Ms. Watson but to many of the women at The Blaze.

21.    On December 17, 2021, Jack Murphy appeared on YAH. Ms. Watson found Murphy grossly misogynistic and he shouted at Ms. Watson when she read a YouTube livestream superchat question from a viewer regarding his controversial past (Ms. Watson had no prior knowledge of this past when she innocently read the viewer's question).

22. After Murphy swore at Ms. Watson and stormed out of the studio, Mr. Schaffer went out for dinner and drinks with Murphy to "smooth" it over. Ms. Watson and members of the audience were upset at Mr. Schaffer's reaction and his tolerance of Murphy's abuse.

23. Mr. Schaffer told Ms. Watson that he refused to control Murphy because Ms. Watson was a woman and stated that if he demanded his guest stop his abuse, Ms. Watson would have looked "weaker." Ironically, Ms. Watson, reluctantly, defended Mr. Schaffer later over the blow-back. Mr. Schaffer later tweeted about the incident, embarrassing Ms. Watson.

24. When YAH returned from its break in early January 2022, Mr. Schaffer unilaterally booked several additional guests with particularly contemptible and sexist opinions towards women, typically without consulting Ms. Watson or letting her know the extent of these opinions.

25. It became clear to Ms. Watson that on each of these episodes she was to be the designated punching bag for the sexist guests and for Mr. Schaffer himself. Ms. Watson is a serious journalist, and she did not agree to assume that demeaning role nor was she warned about it in advance.

26. The idea behind YAH was never that it was to be a forum for the humiliation and abuse of the female co-host as the male host smirked and egged on this appalling behavior.

27. It should be noted that a significant part of Mr. Schaffer's audience calls itself "traditional," but actual traditional values have nothing to do with the abuse of and contempt for women.

28. This portion of Mr. Schaffer's audience, which he cultivates, simply uses the idea of "tradition" as a cover for its extreme misogyny. Such viewers often flooded YAH's discussions with superchats and grossly sexist comments (as well as anti-Jewish commentary) that made Ms. Watson extremely uncomfortable and prevented her from performing her duties as she wished.

29.     No matter how many times she asked Mr. Schaffer to address the issue and to end the hostile atmosphere of harassment, which she did repeatedly, he would not.

30.     It became a running gag for Mr. Schaffer and his audience that some of Mr. Schaffer's fans would leave superchat comments with coded dog whistles that referenced grossly misogynistic and/or anti-Semitic comments for Ms. Watson to read with her not knowing what they meant.

31.     Mr. Schaffer encouraged this humiliation of Ms. Watson even though he was aware of how much she hated it and protested it. She complained to the management of The Blaze about it to no avail.

32.     Mr. Schaffer would also consistently make disrespectful comments about the fact that Ms. Watson is an atheist. This also encouraged the audience to attack her, something she must still put up with today and that did not happen before Mr. Schaffer made it an issue.

33.     Much of the conduct that created the hostile work environment was of an explicitly sexual nature.

34.     Mr. Schaffer would endlessly reference sex, often specifically gay sex, and discuss penises, among other sexual matter (often graphically), in front of the guests and Ms. Watson.

35.     CEO Tyler Cardon even asked Ms. Watson to "get Mr. Schaffer to stop talking about dicks so much." She told Mr. Cardon that if he wanted it to stop, he must talk to Mr. Schaffer himself, as Mr. Schaffer refused to listen to women – something Mr. Schaffer proudly admits. Working with a man who would not ever listen to her solely because she is female was insulting and damaged her ability to perform her duties.

36.     It did not help that Mr. Schaffer would get drunk on set, and get guests drunk as well. He would do shots of hard liquor before many of the shows. It was impossible to work professionally in an environment where her co-host was drunk and impaired.

37.     The hostile work environment created by Mr. Schaffer was taking a toll on Ms. Watson. She was so disturbed and stressed by Mr. Schaffer's conduct that she experienced significant vertigo. She had to sit out of a number of shows because of it.

38.     On March 4, 2022, the YAH team had a group planning session to address these matters. It was a two-hour meeting with Ms. Watson, Mr. Schaffer, and other The Blaze employees, including Rikki Ratliff, and The Blaze President Gaston Mooney.  Ms. Watson expressed how much Mr. Schaffer's constant sexism and hostile, unprofessional behavior on the show distracted and humiliated her, making it impossible for her to do her job. She detailed the same regarding his constant offensive comments about women and pointed out how this was also encouraging some individuals in the audience to reflect this attitude. These audience members, encouraged by Mr. Schaffer's conduct, attacked Ms. Watson so often and so intensely that other guests noted it and were put off. As this meeting, Mr. Schaffer asked Ms. Watson point blank if the hostile sexism bothered her. She said "Yes." He also asked if it made her want to quit. She again said "Yes."

39.     The Blaze management knew about this and agreed that this conduct was inappropriate, promising Ms. Watson that management would address the issues. But the management failed to do so despite knowing of the hostile work environment and harassment.

40.     After a tantrum in which Mr. Schaffer refused to participate in production meetings until his demands were met, Mr. Schaffer told Ms. Watson that he would not be helping select guests any longer because Ms. Watson "shot down his suggestions." In reality, Ms. Watson had merely asked him – again – to stop unilaterally booking misogynistic and abusive people without discussing it with her.

41.     At this point, Mr. Schaffer refused to participate in daily show planning and refused to book guests. This increased the burden on Ms. Watson. Ms. Watson informed The Blaze management, which did nothing.

42.     Ms. Watson was subjected to public disparagement by Mr. Schaffer of a grossly sexual nature. Because this was an Internet-based show, social media interaction by Mr. Schaffer was a component of his participation in the show. He used social media, in the context of the show, to harass Ms. Watson.

43.     For example, on April 7, 2022, Mr. Schaffer tweeted in response to a tweet by conservative media personality and former government official Dr. Seb Gorka that he "hopes" Ms. Watson saw what Dr. Gorka had tweeted and "sleeps with" him. This disgraceful comment in the context of a well-known and respected member of the conservative community – and one who himself is happily married to an accomplished woman – was devastating to Ms. Watson.

44.     Dr. Gorka's tweet was referring to the situation where Mr. Schaffer sat silently and said nothing while Jack Murphy shouted abuse at her during the show. This was too much.

45.     Unable to perform her duties within this hostile work environment any longer, Ms. Watson immediately texted The Blaze CEO Tyler Cardon and President Gaston Mooney and informed them that she could not continue this way.

46.     Mr. Schaffer texted Ms. Watson an apology some days later but did not delete his appalling tweet. The offending tweets were still accessible as of the time of Ms. Watson's administrative complaint.

47.     The Blaze management was fully aware that they had a problem with Mr. Schaffer, but he was their "star." He was abusive and sexist to other women at The Blaze as well. Ms. Watson is informed and believes that other women also complained to management about him to no avail.

48.     Ms. Watson tried to find a solution to the deteriorating situation.

49.     She had been having weekly interactions with The Blaze officers since January 2022 alerting them to Mr. Schaffer's behavior, the things he did and said that created the hostile

environment, the continuing sexism he expressed, and how hostile he made the working environment.

50.     Ms. Watson was prepared to fix the show, but it became clear management considered Mr. Schaffer its primary "asset" and that it had no interest in protecting her from the unlawful, discriminatory behavior of its star. Management repeatedly promised that corrective actions would be taken, but none ever were.

51.     Left with no other options, Ms. Watson was forced stop participating in the show until the situation resolved.

52.     Tyler Cardon called her and indicated that he had told Mr. Schaffer that she had left and that the show was over. Ms. Watson told him that she was extremely upset.

53.     Through this period of time Ms. Watson informed management that Mr. Schaffer had publicly disparaged her and continued to do things that have hurt her reputation. During this period, Mr. Schaffer was still with The Blaze.

54.     A few weeks later, Ms. Watson asked management if she could address what was going on with the audience. Many members of the audience were loyal and decent, and Ms. Watson felt an obligation to them, especially since they had paid money to subscribe to The Blaze in order to watch YAH. Mr. Cardon reminded her that she was contractually obligated to ask permission before making a public statement. The Blaze asked that she email its management before she went public with the workshopped version of the announcement, and Ms. Watson did that. She cooperated in coordinating the message.

55.     In May 2022, The Blaze finally made a community post on YAH's YouTube channel telling people that the show was on hiatus. The Blaze had not once said a single thing about this show, about what happened, or addressed what would happen going forward.

56.     What Ms. Watson ultimately posted was on Twitter and was posted on May 15, 2022. Mr. Schaffer responded to this saying that this was the first he was hearing that the show was over.

57.     Mr. Schaffer also posted this to his Telegram, where he said he was not a liar and "don't believe the hype." This was not true, which he admitted to on a livestream with another very prominent YouTuber, Nick Rekieta. This publicly disparaged Ms. Watson as a liar.

58.     Mr. Schaffer also then went to his Twitter and posted a series of bizarre tweets about the situation, such as "I haven't played a single card," "I just got professionally dumped by text lol," and so forth.

59.     There was more disparagement by Mr. Schaffer while he was still with The Blaze. On a Nick Rekieta livestream in May 2022, Mr. Schaffer made comments about how he helped a female friend make a lot of money, who then stabbed him in the back. People immediately understood that he meant Ms. Watson and were quick to send the clips to her. This is obviously also untrue but damaged Ms. Watson's reputation in the industry.

60.     On another stream, Mr. Schaffer contended that he had nothing to do with an incident (that he caused) where a guest thought Ms. Watson was trying to blindside him. The insinuation was that Ms. Watson was the one who arranged the conflict.

61.     At a movie premiere at the end of July 2022, again while still affiliated with The Blaze, Mr. Schaffer told Harrison Smith of InfoWars and Scooter Downey (an influential Fox news employee) and Scooter's wife that Ms. Watson tried to get his wife to divorce him and he had to "sue her to keep her quiet." He told others that Ms. Watson called him and threatened to go public with information about personal indiscretions. This was all completely false.

62.     Mr. Schaffer has also told several people  that Ms. Watson had made "passes" at him and tried to hit on him on more than one occasion. This was also false.

63.    The Blaze constructively terminated Ms. Watson in the Spring of 2022, or alternatively actively terminated her in or about July 2022 after she complained, through counsel, about Mr. Schaffer's conduct.

64.    On or about September 24, 2022, The Blaze announced on Twitter that Schaffer had been "terminated for violating company policies and standards" after an "investigation regarding a personal matter." Ms. Watson is informed and believes that the alleged wrongdoing was Mr. Schaffer physically harassing one or more female The Blaze employees.

65.    Ms. Watson asserts that The Blaze failed to properly investigate her complaints regarding Mr. Schaffer, that it failed to take reasonable and necessary corrective action when it became aware of the misconduct, and that it failed to discipline Mr. Schaffer in any way for his misconduct as to Ms. Watson.

66.    This misconduct has been devastating to Ms. Watson's future and has derailed a very promising career.

67.    But for the discriminatory and retaliatory actions by The Blaze based on Ms. Watson's sex and religion, Ms. Watson would have continued to thrive and develop her career.

68.    Worse yet, when Ms. Watson raised these issues to The Blaze, it failed to conduct a proper investigation and either wrongfully constructively terminated her or terminated her as a result of her complaint. The Blaze's actions and termination of Ms. Watson represents a continuing pattern of discrimination and retaliation against her in violation of the law, the Agreement, and The Blaze's own policies and procedures.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

69.    Ms. Watson has met all prerequisites for bringing this action against The Blaze for violations of Title VII and the TCHRA. 42 U.S.C. §2000e; Tex. Labor Code § 21.051. Ms. Watson timely filed a complaint with the Texas Workforce Commission Civil Rights Division ("TWCCRD")

within 300 days of the adverse action asserted herein and that complaint sufficed as a complaint under the federal EEOC. Ms. Watson received a Notice of Right to File a Civil Action from the TWCCRD on December 20, 2022, and a Notice of Right to Sue from the EEOC on January 23, 2023. This suit was filed within 90 days of Ms. Watson's receipt of the Notices. As such, all conditions precedent to the institution of this lawsuit have been fulfilled.

## CAUSES OF ACTION

70.     All factual allegations above are incorporated by reference into each of the causes of action below.

## COUNT 1: SEX AND RELIGIOUS DISCRIMINATION<br>IN VIOLATION OF TITLE VII

71.     Pursuant to federal law, Plaintiff pleads a cause of action against Defendant of intentional and malicious sex discrimination and discrimination based on Plaintiff's religion.

72.     During the course of Ms. Watson's employment, The Blaze, acting through its employees, agents, and representatives, discriminated against Ms. Watson in the terms, conditions, and privileges of her employment due to her sex.

73.     During the course of Ms. Watson's employment, The Blaze, acting through its employees, agents, and representatives, discriminated against Ms. Watson in the terms, conditions, and privileges of her employment due to her religion.

74.     This discrimination was knowing, intentional, and occurred with malice or with reckless indifference to the rights of Plaintiff.

75.     As a proximate result of Defendant's conduct, Ms. Watson is entitled to all remedies under 42 U.S.C. §2000e, including without limitation, compensatory damages, exemplary damages, costs, and attorneys' fees for all of which she hereby sues.

## COUNT 2: SEX AND RELIGIOUS DISCRIMINATION
## IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

76.     Pursuant to Texas State law, Plaintiff pleads a cause of action against Defendant for sexual discrimination in violation of the Texas Commission on Human Rights Act (TCHRA). Tex. Labor Code § 21.051.

77.     During the course of Ms. Watson's employment, The Blaze, acting through its employees, agents, and representatives, discriminated against Ms. Watson in the terms, conditions, and privileges of her employment due to her sex.

78.     During the course of Ms. Watson's employment, The Blaze, acting through its employees, agents, and representatives, discriminated against Ms. Watson in the terms, conditions, and privileges of her employment due to her religion.

79.     As a proximate result of Defendant's conduct, Ms. Watson is entitled to all remedies under Chapter 21 of the Texas Labor Code, including without limitation, compensatory damages, exemplary damages, costs, and attorneys' fees for all of which she hereby sues.

## COUNT 3: WRONGFUL CONSTRUCTIVE TERMINATION
## IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

80.     Pursuant to Texas State law, Plaintiff pleads a cause of action against Defendant for wrongful termination in violation of the TCHRA. Tex. Labor Code § 21.051

81.     Upon information and belief, at all times material to this action, The Blaze employed more than 200 employees and is an "employer" within the meaning of the TCHRA.

82.     The Blaze, acting through its employees, agents, and representatives, wrongfully constructively terminated Ms. Watson in the Spring of 2022, by knowingly creating and tolerating a hostile work environment that made it impossible for Ms. Watson to perform her duties.

83.      The Blaze, acting through its employees, agents, and representatives, thereby terminated Ms. Watson in the terms, conditions, and privileges of her employment due to her gender and religion.

84.      Alternatively, The Blaze, acting through its employees, agents, and representatives, wrongfully terminated Ms. Watson in or about July 2022 for making a complaint to The Blaze through counsel regarding the conduct set forth herein.

85.      The Blaze, acting through its employees, agents, and representatives, thereby terminated Ms. Watson in the terms, conditions, and privileges of her employment due to her complaints regarding sexual harassment and/or a hostile work environment, and discrimination based on religion.

86.      As a proximate result of Defendant's conduct, Ms. Watson is entitled to all remedies under Chapter 21 of the Texas Labor Code, including without limitation, compensatory damages, exemplary damages, costs, and attorneys' fees for all of which she hereby sues.

## COUNT 4: RETALIATION
## IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

87.      Pursuant to Texas State law, Plaintiff pleads a cause of action against Defendant for retaliation in violation of § 21.055 of the TCHRA.

88.      The Blaze violated the TCHRA by terminating Ms. Watson's employment in retaliation for her opposition to conduct prohibited by TCHRA, and for her participation in conduct protected under the TCHRA.

89.      As a proximate result of Defendant's conduct, Ms. Watson is entitled to all remedies under Chapter 21 of the Texas Labor Code, including without limitation, compensatory damages, exemplary damages, costs and attorneys' fees for all of which she hereby sues.

## ATTORNEYS' FEES

90.     Ms. Watson seeks recovery of all attorneys' fees and costs from The Blaze pursuant to 42 U.S.C. §2000e-5(k) and (TEX. CIV. PRAC. & REM. CODE § 38.001, the TCHRA, and under any other applicable provision at law or equity, for which she hereby sues.

## EXEMPLARY DAMAGES

91.     Defendant's actions were intentional, with malice or with reckless disregard to Ms. Watson's statutory-protected rights. Accordingly, Ms. Watson asks that punitive damages be awarded against Defendant in the highest amount under law for all of which she hereby sues.

## JURY DEMAND

92.     Pursuant to Federal Rules of Civil Procedure 38 and 39, Plaintiff hereby demands a trial by jury.

## PRAYER

For the reasons stated, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final hearing, Plaintiff Sydney Watson have judgment against Defendant Blaze Media LLC, for the following:

A.     Declaratory judgment, declaring Defendant's past practices herein complained of to be unlawful under Title VII and the TCHRA.

B.     Plaintiff's actual damages, including mental anguish, pain and suffering, lost wages and benefits (both back pay and front pay);

C.     Exemplary damages for the maximum amount allowed by law;

D.     Pre-judgment and post-judgment interest at the maximum rate allowed by law;

E.     Costs of suit, including attorney's fees;

F.     The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

SCHLICHTER, SHONACK
& KEETON, LLP

By: */s/ Kurt A. Schlichter*
Kurt A. Schlichter
State Bar No. 24104610
kas@sandsattorneys.com
2381 Rosecrans Ave., Ste. 326
El Segundo, California 90245
Phone: (310) 643-0111
Fax: (310) 643-1638

Respectfully submitted,

SCHEEF & STONE, LLP

James A. Pikl
State Bar No. 16008850
jim.pikl@solidcounsel.com
2600 Network Blvd., Ste. 400
Frisco, Texas 75034
Phone: (214) 472-2100
Fax: (214) 472-2150

ATTORNEYS FOR PLAINTIFF
SYDNEY WATSON