**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SYDNEY WATSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3:23-CV-00279-B** |
| | § | |
| **BLAZE MEDIA LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE**
**ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

Dated: March 23, 2023

Respectfully submitted,

*/s/ Celeste R. Yeager*
Celeste R. Yeager
Texas State Bar No. 00797715
Courtney E. Jackson
Texas State Bar No. 24116560
LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX 75201
cyeager@littler.com
cejackson@littler.com
(214) 880-8100 (Telephone)
(214) 880-0181 (Facsimile)

*/s/ Jordan W. Cowman*
Jordan W. Cowman
Texas State Bar No. 04932800
GREENBERG TRAUIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Jordan.cowman@gtlaw.com
(214) 665-3600 (Telephone)
(214) 665-5952 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF FACTS ................................................................. 1

III.  ARGUMENTS AND AUTHORITIES.............................................. 6

     A.    ARBITRATION AGREEMENTS ARE STRONGLY FAVORED AND ARE VALID UNDER FEDERAL AND STATE LAW. .................................... 6

     B.    THE FAA GOVERNS THE PARTIES' ARBITRATION AGREEMENT.......... 7

     C.    THE COURT SHOULD COMPEL ARBITRATION BECAUSE THE ARBITRATION AGREEMENT IS ENFORCEABLE, AS A MATTER OF LAW, UNDER THE FAA. ............................................................... 8

          1.    PLAINTIFF ENTERED INTO A VALID AND ENFORCEABLE AGREEMENT TO ARBITRATE. ............................................. 8

          2.    PLAINTIFF'S CLAIMS CLEARLY FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT. ............................................. 10

     D.    TITLE 9 U.S.C. SECTION 401, ET SEQ. DOES NOT APPLY TO PLAINTIFF'S CLAIMS. .................................................................... 13

     E.    THE PRESENT LAWSUIT MUST BE DISMISSED, OR ALTERNATIVELY, STAYED.............................................................. 14

IV.  CONCLUSION.................................................................................. 16

4864-5123-1315.5 / 118122-1002

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*In re AdvancePCS Health, L.P.*,
  172 S.W.3d 603 (Tex. 2005)......................................................................8

*Alford v. Dean Witter Reynolds, Inc.*,
  975 F.2d 1161 (5th Cir. 1992) ...............................................................15

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
  513 U.S. 265 (1995)..................................................................................7

*Angelou v. African Overseas Union*,
  33 S.W.3d 269 (Tex. App.—Houston [14th Dist.] 2000, no pet.)............9

*Anglin v. Tipps*,
  842 S.W.2d 266 (Tex. 1992)...................................................................13

*Armstrong v. Assocs. Int'l Holdings Corp.*,
  No. 06-11177, 2007 U.S. App. LEXIS 17563 (5th Cir. July 24, 2007) ...................................15

*ATT Tech., Inc. v. Communication Workers of Am.*,
  475 U.S. 643 (1986)................................................................................13

*Budd v. Max Intern., LLC*,
  339 S.W.3d 915 (Tex. App.- Dallas 2011, no pet.) ................................8

*Cantella & Co. v. Goodwin*,
  924 S.W.2d 943 (Tex. 1996)...........................................................6, 7, 13

*Carter v. Countrywide Credit Indus., Inc.*,
  362 F.3d 294 (5th Cir. 2004) ...................................................................9

*Circuit City Stores v. Adams*,
  532 U.S. 105 (2001)..................................................................................7

*Complaint of Hornbeck Offshore Corp.*,
  981 F.2d 752 (5th Cir. 1993) .................................................................16

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
  748 F.3d 249 (5th Cir. 2014) .................................................................12

*Crossmark, Inc. v. Hazar*,
  124 S.W.3d 422 (Tex. App. – Dallas 2001, pet. denied)........................13

*Domingo v. Mitchell*,
  257 S.W.3d 34 (Tex. App.—Amarillo 2008, pet. denied)........................9

# TABLE OF AUTHORITIES

(CONTINUED)

PAGE(S)

*EZ Pawn Corp. v. Mancias*,
  934 S.W.2d 87 (Tex. 1996)................................................................8

*Fedmet Corp. v. M/V BUYALYK*,
  194 F.3d 674 (5th Cir. 1999) .........................................................15

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)........................................................................9

*In re FirstMerit Bank, N.A.*,
  52 S.W.3d 749 (Tex. 2001)..............................................................8

*Forest Oil Corp. v. McAllen*,
  268 S.W.3d 51 (Tex. 2008)............................................................15

*Garza*,
  2014 WL 11332307, at *4 ...............................................................9

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)..........................................................................7

*Gray v. Sage Telecom, Inc.*,
  410 F. Supp. 2d 507 (N.D. Tex. 2006) ...........................................8

*Guitierrez v. Acad. Corp.*,
  967 F. Supp. 945 (S.D. Tex. 1997) ................................................15

*Halliburton Energy Srvcs., Inc. v. Ironshore Specialty Ins. Co.*,
  921 F.3d 522 (5th Cir. 2019) ...........................................................9

*Howsam v. Dean Witter Reynolds*,
  537 U.S. 79 (2002)..........................................................................8

*In re J.D. Edwards World Solutions Co.*,
  87 S.W.3d 546 (Tex. 2002).............................................................13

*Johnson v. Scott Fetzer Co.*,
  124 S.W.3d 257 (Tex. App.—Forth Worth 2003, pet. denied) ...........14

*Kalenga v. Irving Holdings, Inc.*,
  No. 3:19-CV-1969-S, 2020 WL 7496208 (N.D. Tex. Dec. 20, 2020) ......8

*Kirby Highlands Lakes Surgery Ctr., L.L.P. v. Kirby*,
  183 S.W.3d 891 (Tex. App.—Austin 2006, no pet.) .............................7

viii

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE(S)

*Kubala v. Supreme Prod. Servs., Inc.*,
   830 F.3d 199 (5th Cir. 2016) ..............................................................12

*Lalik v. Roadrunner Dawes Freight Sys.*,
   No. 4:07-CV-152-A, 2008 WL 1868320 (N.D. Tex. Apr. 22, 2008) ......................................14

*Lizalde v. Vista Quality Mkts.*,
   746 F.3d 222 (5th Cir. Tex. 2014) ..............................................................10

*Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Longoria*,
   783 S.W.2d 229 (Tex. App.—Corpus Christi 1989, no writ) ...............................................12

*Morrison v. Amway Corp.*,
   49 F. Supp. 2d 529 (S.D. Tex. 1998) ..............................................................16

*Moses H. Cone Mem'l Hosp.*,
   460 U.S. at 24-25 ..............................................................13

*In re Palm Harbor Homes, Inc.*,
   195 S.W.3d 672 (Tex. 2006)..............................................................10

*Perry v. Thomas*,
   482 U.S. 483 (1987)..............................................................7

*Petrofac, Inc. v. DynMcDermott Petroleum Operations, Co.*,
   687 F.3d 671 (5th Cir. 2012) ..............................................................12

*Prudential Sec., Inc. v. Marshall*,
   909 S.W.2d 896 (Tex. 1995)..............................................................7, 13

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010)..............................................................11, 12

*Staggs*,
   2006 WL 74077097, at *1 ..............................................................9

*Thick v. Dolgencorp of Tex., Inc.*,
   2017 U.S. Dist. LEXIS 4258 (E.D. Tex. Jan. 11, 2017)..............................................................10

*Tittle v. Enron Corp.*,
   436 F.3d 410 (5th Cir. 2006) ..............................................................15

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960)..............................................................13

ix

# TABLE OF AUTHORITIES

(CONTINUED)

PAGE(S)

*Volt Info. Sci., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989) ..................................................................................................9

*In re Weekley Homes, L.P.*,
  180 S.W.3d 127 (Tex. 2005) ......................................................................................8

*Williamson v. Bank of N.Y. Mellon*,
  947 F. Supp. 2d 704 (N.D. Tex. 2013) ...................................................................10

**Statutes**

9 U.S.C. § 2 ...............................................................................................................7

9 U.S.C. § 3 ......................................................................................................15, 16

9 U.S.C. § 401, *et seq.* ..................................................................................... *passim*

Title VII of the Civil Rights Act of 1964 ...........................................................1, 14

Federal Arbitration Act, 9 U.S.C. § 1, et seq ("FAA") ...................................... *passim*

Tex. Bus. & Com. Code §§ 322.001-322.021 .........................................................10

Tex. Civ. Prac. & Rem. Code § 171.001, *et seq.* .................................................8, 13

Texas Commission on Human Rights Act ("TCHRA") .......................................1, 14

Texas General Arbitration Act ...................................................................................8

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) .............................................................................................1

Fed. R. Civ. P. 12(b)(6) .............................................................................................1

x

Defendant Blaze Media LLC ("Blaze") moves the Court for an Order dismissing this action and compelling arbitration of Plaintiff Sydney Watson's ("Plaintiff") claims, or alternatively, staying the action pending resolution of the arbitration in accordance with the arbitration agreement between the parties, and respectfully shows the Court the following:

## I.  INTRODUCTION

Plaintiff entered into a Talent Services Agreement ("TSA") with Blaze to provide co-hosting and production services for an episodic audio-video series consisting of daily news and commentary for Blaze as an independent contractor. On February 8, 2023, Plaintiff filed the present lawsuit against Blaze alleging claims for sex and religious discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Texas Commission on Human Rights Act ("TCHRA"), wrongful constructive termination in violation of the TCHRA, and retaliation in violation of the TCHRA. Not only do Plaintiff's own statements, emails and text messages reveal that her claims are untrue, Plaintiff  (1) was not employed by Blaze and instead worked for Blaze in an independent contracting capacity; and (2) entered into a valid and binding arbitration agreement with Blaze that required all disputes arising out of the TSA (which created and defined her working relationship with Blaze) to be resolved through mutually binding arbitration. Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA")[1], the Court should, therefore, dismiss this action and compel arbitration, or, alternatively, stay this action pending resolution of the arbitration.

## II.  STATEMENT OF FACTS

On May 1, 2021, Plaintiff and Blaze entered into the TSA, which governed the terms and conditions of her independent contracting relationship with Blaze to perform co-hosting and

---

[1] As discussed in Section III.E, the Federal Arbitration Act, 9 U.S.C. §§ 3, 4 allows for dismissal of the action.  To the extent necessary, Blaze also brings this Motion under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

1

production services for an episodic audio-video series consisting of daily news and commentary for Blaze in exchange for payment of money from Blaze. (Declaration of Tyler Cardon ("Cardon Decl."), filed herewith as Exhibit 1, at ¶ 6 and Ex. A; APP. 003, 007-018).

The TSA contained the following arbitration provision:

> Governing Law; Arbitration. This Agreement shall be governed by and construed in accordance with the laws of the state of Texas. The parties agree that any dispute between them regarding any matter related to or arising out of this agreement (an "Arbitrable Dispute") shall be resolved by binding, confidential arbitration in Dallas, Texas, by a single arbitrator from Judicial Arbitration & Mediation Services, Inc. ("JAMS"), who must be a retired Judge, having served on any federal court located in Texas, or the Dallas superior court, or a higher court of the state of Texas. The rules and procedures for JAMS, including JAMS's Emergency Relief Procedures, shall govern the proceedings, including the selection of the arbitrator. The parties each hereby waive any claim that Dallas, Texas is an inconvenient forum, or that either personal or subject matter jurisdiction is lacking in Dallas, Texas. Without limiting the generality of the foregoing, the parties each agree that all questions, as to whether or not an issue constitutes a dispute subject to arbitration under this section, shall be resolved by arbitration in accordance with this section. The arbitrator shall have the power to impose any sanction against any party permitted by Texas law. The filing and prosecution by any Party in any court of an action alleging an Arbitrable Dispute is a breach of this Agreement, and the non-breaching party shall be entitled to recover damages for such breach through an arbitration pursuant to this paragraph. The occurrence of such arbitration proceedings shall be maintained as confidential information of each of the parties. The arbitrator shall render a single written decision reached. Any award issued as a result of such arbitration shall be finding and binding, and a judgment rendered thereon many be entered in any court having jurisdiction thereof.

("Arbitration Agreement"). (Cardon Decl., at ¶ 6 and Ex. A; APP. 016). Plaintiff electronically signed the TSA on May 1, 2021. (Cardon Decl., at ¶ 6 and Ex. B; APP. 003, 020-021).

Despite Plaintiff's express agreement to arbitrate all disputes arising out of the TSA with Blaze, Plaintiff filed the present lawsuit alleging sex and religious discrimination, wrongful constructive termination, and retaliation. *See* Plfs' Complaint, at ¶¶ 6-89. Specifically, Plaintiff alleges that her former co-host, Elijah Schaffer, subjected her to misogynistic, anti-Semitic,

2

harassing, and disrespectful behavior and that she complained to Blaze's management to no avail. *Id.* at ¶¶6-68. Plaintiff further alleges that "Blaze constructively terminated [her] in the Spring of 2022, or alternatively, actively terminated her in or around July 2022 after she complained, through counsel's demand letter, about Mr. Schaffer's conduct." *Id.* at ¶63.

Plaintiff's outrageous claims are made in an attempt to circumvent her status as an independent contractor with an agreement to arbitrate and create a circus or media frenzy by filing a lawsuit in a public forum and directly contradicting her own description of the events she now attempts to paint as discriminatory, harassing, and retaliatory to this Court.

For example, Plaintiff complains in her Complaint that "(t)he choice of guests compounded [her] growing discomfort with the show." She alleges "[o]n December 3, 2021, notorious bigot Nick Fuentes appeared on YAH," yet in a text exchange on December 4, 2021, with Tyler Cardon referencing the Fuentes guest appearance, Plaintiff agreed with having Mr. Fuentes on the show, although she now complains it was harassment. (Cardon Decl., at ¶ 7 and Ex. C; APP. 003, 026-027). She further replied that usually when she thinks a proposed guest is a "horrible idea, [she] say[s] no right out of the gate," and they do not get booked, but she "let the Nick thing slide and [was] **glad she did** to an extent," and that she does not "mind women haters." (Cardon Decl., at ¶ 7, 8 and Ex. C; APP. 003, 026) (emphasis added).

She further defended her decision not to veto the Fuentes appearance in a text message to Mr. Cardon, "Like I said – shoot down bad ideas with good ideas. Half the issue is that we try to hide undesirable views rather than pulling them out into the light and seeing them for what they are." (Cardon Decl., at ¶ 7 and Ex. C; APP. 003, 026). Plaintiff told Mr. Cardon that he could trust that she was "making hardcore vetoes" whenever she felt a proposed guest was a bad fit. (Cardon Decl., at ¶ 8; APP. 003). Mr. Cardon replied to Plaintiff via text message on December 4, 2021,

3

stating that Mr. Cardon spoke to Mr. Schaffer and asked the Plaintiff to "[please] give [Mr. Cardon] a heads up if [Plaintiff's] instincts are ever telling [Plaintiff] the guest is a bad fit." (Cardon Decl., at ¶ 7 and Ex. C; APP.003, 026). Plaintiff never did so. Further, prior to Mr. Fuentes appearing on the show, Plaintiff answered a viewer question during the show in regards to Mr. Fuentes appearing. (Cardon Decl., at ¶ 9; APP. 003). In the September 15, 2021, episode of the show, Plaintiff said, "I just disagree with a bunch of his stances" but that Plaintiff was not "anti-platforming people" and that Plaintiff "[does not] care" because "you interrogate ideas and if it's a bad idea, you use a better idea to beat it, I don't understand, I'm fine with that." (Cardon Decl., at ¶ 9; APP. 003).

Also, Plaintiff complains about Jack Murphy appearing on YAH on December 17, 2021, yet it was Plaintiff's idea to book Mr. Murphy as a guest, and she personally added his name and contact information to a list of guests to book for the producer to arrange for Mr. Murphy to come on the show. (Cardon Decl., at ¶ 10 and Ex. J; APP. 003, 029). After Mr. Murphy's appearance, Plaintiff created an entire merchandise line based on the episode featuring his appearance. (Cardon Decl., at ¶ 10; APP. 004). During the episode, Mr. Murphy said to Plaintiff "f**k you! Heartfelt." (Cardon Decl., at ¶ 10; APP. 004). Plaintiff then created designs for sweatshirts, hoodies, t-shirts, and coffee mugs branded "Heartfelt," which are currently offered for sale on Plaintiff's website. (Cardon Decl., at ¶ 10; APP. 004; *see also* Yeager Decl., at ¶ 3 and Ex. I; APP. 043, 046).

In addition to Plaintiff alleging she had growing discomfort with the show, Plaintiff also alleges that she continuously complained of alleged misconduct from December 2021 to August 2022 and was ignored. However, Plaintiff's own text messages and communications with Blaze management (including Mr. Cardon) do not align with these allegations. For example:

(i)    On September 11, 2021, Plaintiff texted Mr. Cardon that she "really want[s] some leftists on. Or people we don't agree with. The same same same *agree agree agree*

stuff is a bit zzzz;" (Cardon Decl., at ¶ 11 and Ex. D; APP. 004, 031).

(ii)   On January 3, 2022, in a Signal chat between Plaintiff, Mr. Schaffer, and Mr. Cardon, Plaintiff stated that she is "[g]etting great feedback;" (Cardon Decl., at ¶ 12 and Ex. E; APP. 004, 033).

(iii)   On January 18, 2022, Mr. Cardon asked via text message if Plaintiff is doing OK and Plaintiff responded, "I'm actually doing great!!" (Cardon Decl., at ¶ 13 and Ex. F; APP. 004, 035).

(iv)   Also on January 18, 2022, Plaintiff claimed she has "some great ideas" for the show; (Cardon Decl., at ¶ 14; APP. 004).

(v)   On May 14, 2022, Plaintiff tweeted via Twitter: "Blaze and I are still connected and hopefully can produce something awesome." (Cardon Decl., at ¶ 15 and Ex. G; APP. 004, 037).

When Plaintiff informed Mr. Cardon she no longer wanted to co-host YAH, she said it was because she no longer trusted her co-host and no longer wanted to be associated with him or YAH.[2] (Cardon Decl., at ¶ 17; APP. 004). She emphasized that her frustrations related only to her co-host and further added that she enjoyed worked with everyone else at the network. (Cardon Decl., at ¶ 17; APP. 004). Blaze then offered Plaintiff an opportunity to continue working with Blaze as an independent contractor by developing another show for her to host either alone or with a different co-host. (Cardon Decl., at ¶ 18; APP. 004). Plaintiff agreed and took some time off while they were discussing such other project. (Cardon Decl., at ¶ 18; APP. 005). Plaintiff led Blaze to believe she planned to continue working with it as she continually communicated with Gaston Mooney, President of Blaze, about a potential podcast and its content. (Declaration of Gaston Mooney ("Mooney Decl."), filed herewith as Exhibit 2, at ¶ 4; APP. 039). As recently as June 9, 2022, Plaintiff indicated to Mr. Mooney via text she still wanted to collaborate with Blaze, and Blaze continued to pay Plaintiff the talent fee in full pursuant to the TSA expecting a new podcast idea and content from Plaintiff. (Mooney Decl., at ¶ 5 and Ex. H; APP. 039, 041). Blaze did not learn about Plaintiff's allegations of alleged underlying sexual harassment associated with YAH from

---

[2] Plaintiff and her co-host, Mr. Schaffer, and his wife, were friends outside of work and had a falling out in their personal relationship when Mr. Schaffer and his wife did not like Plaintiff's boyfriend, an event wholly unrelated to and outside of her co-hosting YAH in accordance with the TSA. (Cardon Decl., at ¶ 16; APP. ___).

2021, and that she did not intend to participate in a new show with Blaze until receiving a demand letter from Plaintiff's attorney on August 12, 2022. (Cardon Decl., at ¶ 19; APP. 004).

Plaintiff is attempting to circumvent her independent contractor status and the TSA obligations to spew inaccuracies to generate publicity for herself. The Court should dismiss this action and compel arbitration because Plaintiff entered into a valid and binding arbitration agreement with Blaze that covers the disputes at issue in this case. Further, Blaze is entitled to its legal fees and costs incurred in defending this action because Plaintiff received notice of, agreed to, and accepted to submit any claims arising out of the terms and conditions of the TSA to mandatory arbitration.

### III.   ARGUMENTS AND AUTHORITIES

This action should be dismissed, and Plaintiff should be compelled to arbitrate her claims against Blaze. The strong federal policy favoring arbitration requires this Court to enforce the Arbitration Agreement and compel Plaintiff to arbitrate her claims. The United States Supreme Court has repeatedly adopted a broad reading of the FAA in enforcing arbitration agreements. The Arbitration Agreement between the parties in this case meets the criteria for a valid arbitration agreement and Plaintiff's claims are directly within its scope.

**A.   Arbitration agreements are strongly favored and are valid under federal and state law.**

Federal and state laws strongly favor arbitration, especially when both parties opt for that method of dispute resolution. *See Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996). In fact, any written agreement to submit a dispute to arbitration should be liberally construed, and any doubt as to the arbitrability of an issue should be resolved in favor of arbitration. *Id.* at 944; *Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995); *Kirby Highlands Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 896 (Tex. App.—Austin 2006, no pet.) ("It is well

6

settled that '[a]rbitration is heavily favored under federal and state law and should not be denied unless it can be said with positive assurance that the arbitration clause cannot be interpreted so as to encompass the dispute in question.'").

**B.    The FAA governs the parties' Arbitration Agreement.**

Originally enacted in 1925 to reverse the "longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts," the FAA codifies a strong federal policy favoring arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Circuit City Stores v. Adams*, 532 U.S. 105, 122-23 (2001) (noting the significant benefits of arbitrating claims in the employment context.). Section 2 of the FAA states:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be **valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).

The U.S. Supreme Court has interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce" – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995); *see also Perry v. Thomas*, 482 U.S. 483, 490 (1987) (the FAA "embodies Congress's intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause"). Thus, arbitration agreements between independent contractors and companies that engage in interstate activities[3] are subject to the FAA.

---

[3] Blaze, a for-profit media company engages in the interstate activities of news and entertainment program production, broadcasting, and streaming; its activities are not divided by state lines and are subject to federal regulations. (Cardon Decl., at ¶ 4; APP. 002).

*See, e.g.*, *Kalenga v. Irving Holdings, Inc.*, No. 3:19-CV-1969-S, 2020 WL 7496208, *12 (N.D. Tex. Dec. 20, 2020) (arbitration agreement between taxicab company and drivers who worked as independent contractors was subject to FAA); *see also Budd v. Max Intern., LLC*, 339 S.W.3d 915, 918 (Tex. App.- Dallas 2011, no pet.) (arbitration agreement between company and independent contractor selling its services was subject to FAA).

Because Plaintiff's independent contracting relationship with Blaze affects interstate commerce, the TSA involves "commerce" within the meaning of the FAA. Accordingly, the FAA governs the Agreement.[4]

## C.   The Court should compel arbitration because the Arbitration Agreement is enforceable, as a matter of law, under the FAA.

A party seeking to compel arbitration under the FAA must establish that: (1) there is a valid agreement between the parties; and (2) the claims for which arbitration is sought fall within the scope of the arbitration agreement. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005); *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-84 (2002); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001). ("Once the movant establishes an agreement, the court must then determine whether the arbitration agreement covers the nonmovant's claims."). "If the court finds this two prong inquiry is satisfied, arbitration is mandatory." *Gray v. Sage Telecom, Inc.*, 410 F. Supp. 2d 507, 509-10 (N.D. Tex. 2006).

### 1.   *Plaintiff Entered Into a Valid and Enforceable Agreement to Arbitrate.*

When deciding whether the parties agreed to arbitrate the dispute in question, courts generally should apply ordinary state-law principles that govern the formation of contracts. *See*

---

[4] Texas law is consistent with the federal standard. An agreement to arbitrate in Texas is enforceable under the FAA if: (1) an agreement exists; and (2) the claims raised are within the scope of the agreement. *See In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 605 (Tex. 2005); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996). If for any reason the FAA is inapplicable to Plaintiff's dispute, the arbitration of the TSA is enforceable under Texas General Arbitration Act, which provides that "a written agreement to arbitrate is valid and enforceable." *See* Tex. Civ. Prac. & Rem. Code § 171.001, *et seq.*

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Halliburton Energy Srvcs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019) ("Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate."). "[I]n applying general state law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA], . . . due regard must be given to the federal policy favoring arbitration." *Volt Info. Sci., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989) (internal citations omitted); *see also Staggs*, 2006 WL 74077097, at *1. The party opposing arbitration bears the burden of establishing that the arbitration provision is invalid. *Garza*, 2014 WL 11332307, at *4 (citing *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)).

In Texas, "[f]or a contract to exist, there must be an offer, acceptance, and consideration." *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied). When determining whether a party has in fact assented to the terms of an agreement, courts look to the communications between the parties and the acts and circumstances surrounding the communications. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.). In this case, the parties agreement to arbitrate contained in the TSA is clearly valid and enforceable and supported by ample consideration for multiple reasons.

First, Plaintiff unequivocally accepted and acknowledged her consent to arbitrate any claims arising out of the TSA (*i.e.*, the terms of her co-hosting and production obligations with Blaze) when she electronically signed the TSA with an effective date of May 1, 2021. (Cardon Decl., at ¶ 6 and Ex. A; APP. 003, 016).[5] Accordingly, Plaintiff accepted the terms of the Arbitration Agreement and a valid and enforceable agreement to arbitrate was formed. *See Thick*

---

[5] *See* Tex. Bus. & Com. Code § 322.007(d); *Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704, 709 (N.D. Tex. 2013).

*v. Dolgencorp of Tex., Inc.*, 2017 U.S. Dist. LEXIS 4258, 5-6 (E.D. Tex. Jan. 11, 2017) ("Texas

has adopted the Uniform Electronic Transactions Act (Tex. Bus. & Com. Code §§ 322.001-

322.021), which provides that electronic signatures may be used in contract formation.") (citing

Tex. Bus. & Com. Code § 322.009(a)).

Second, the agreement to arbitrate is expressly mutual, *i.e.*, both Plaintiff and Blaze are

required to arbitrate disputes covered by the Arbitration Agreement. *See Lizalde v. Vista Quality

Mkts.*, 746 F.3d 222, 225 (5th Cir. Tex. 2014) (applying Texas law and stating that, "[m]utual

agreement to arbitrate claims provides sufficient consideration to support an arbitration

agreement."); *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006)

(consideration may take the form of bilateral promises to arbitrate).

Finally, the parties mutually agreed to the process by which arbitration would be initiated.

For example, the parties agreed to the requirements for selecting an arbitrator (*e.g.*, the arbitrator

must be from JAMS, a retired Judge having served on any federal court in Texas, or the Dallas

superior court, or a higher court of the State of Texas) and that any disputes regarding arbitrability

were to be determined by the arbitrator. Such agreement clearly indicates intent to arbitrate any

disputes arising out of the TSA entered between Plaintiff and Blaze.

### 2. *Plaintiff's claims clearly fall within the scope of the Arbitration Agreement.*

The Arbitration Agreement in the TSA undeniably covers Plaintiff's claim. Within her

Complaint, Plaintiff asserts a cause of action against Blaze relating to the termination of her

contractual relationship with Blaze as a co-host and producer of one of its internet-based interview

news and commentary programs. Plfs' Complaint, at ¶¶ 12-14, 63. The relationship between

Plaintiff and Blaze, in turn, was created by the TSA. *Id.*, at ¶¶ 7, 16, 18 (noting that Blaze offered

Plaintiff "a multi-year agreement that would pay [Plaintiff] significant amounts" and repeating

certain terms of the TSA). The express terms of the Arbitration Agreement cover "any dispute between them regarding any matter related to or arising out of this agreement." (Cardon Decl., at ¶ 6 and Ex. A; APP. 003, 016). The claims brought by Plaintiff, which accuse Blaze of wrongdoing insofar of its treatment of her during and at the time of the termination of their contractual relationship, most certainly "relate to" or "arise out of" the TSA. Plaintiff's sex and religious discrimination and retaliation allegations are no exception. The claims are based on conduct that allegedly occurred while Plaintiff was performing the contracted services under the TSA (*i.e.* selection of guests for the show, interviewing the guests in her role as co-host), and as such, are covered by the TSA's Arbitration Agreement. Furthermore, Plaintiff's discrimination and retaliation claims must be based on an adverse employment action under the law and the only adverse employment action alleged by Plaintiff in her Complaint is the alleged wrongful constructive termination of her independent contractor agreement, the TSA.

Moreover, to the extent there are any challenges to or disputes regarding the scope, enforceability, or validity of the Arbitration Provision, those issues are for an arbitrator to decide, not this Court. The arbitrator decides issues of arbitrability and/or enforceability where the parties clearly and unmistakably agreed to delegate them to the arbitrator. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.")*; Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) (citing *Rent-A-Center, West, Inc.*, 561 U.S. at 68-69 (2010)). Here, the Arbitration Agreement expressly states that "the parties each agree that all questions, as to whether or not an issue constitutes a dispute subject to

arbitration under this section, shall be resolved by arbitration in accordance with this section." (Cardon Decl., at ¶ 6 and Ex. A; APP. 003, 016).

Furthermore, the JAM's Comprehensive Arbitration Rules and Procedures, adopted by the Arbitration Provision, delegate such issues to the arbitrator as well. (Declaration of Celeste Yeager, at ¶ 4, Ex. K at JAM's Rule 11(b); APP. 043, 048) ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability as a preliminary matter."); (Cardon Decl., at ¶ 6, Ex. A; APP. 003, 016) ("The rules and procedures for JAMS, including JAMS's Emergency Relief Procedures, shall govern the proceedings."). This Circuit has upheld such delegation where, as here, the arbitration rules have been incorporated into an arbitration agreement. *See Petrofac, Inc. v. DynMcDermott Petroleum Operations, Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (incorporation of AAA rules into arbitration provision of employment agreement constituted clear and unmistakable evidence that parties intended to delegate questions of arbitrability to arbitrator); *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262-63 (5th Cir. 2014) (citing *Petrofac*).

Lastly, to the extent Plaintiff contends otherwise, Plaintiff bears the burden to show that her claims fall outside the scope of the Arbitration Agreement. *See Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Longoria*, 783 S.W.2d 229, 231 (Tex. App.—Corpus Christi 1989, no writ). Plaintiff cannot meet her burden. The United States Supreme Court has held that in "the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *ATT Tech., Inc. v. Communication Workers of Am.*, 475 U.S. 643 (1986). Not only is there a complete absence of

"forceful evidence" negating the application of the Arbitration Agreement to Plaintiff's claims, there is no evidence which even remotely negates its application to her claims.

Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. To be sure, district courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960). This Court should therefore resolve any doubts regarding the scope of the Arbitration Agreement in favor of arbitration.[6] As a result, Plaintiff's claims are covered by the Arbitration Agreement and Blaze's Motion to Compel must be granted.

**D.     Title 9 U.S.C. Section 401,** *et seq.* **does not apply to Plaintiff's claims.**

The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (Title 9 U.S.C. Section 401, et seq.) (the "Act") does not apply to Plaintiff's claims for two reasons: (1) Plaintiff's claims are based on acts that occurred *before* the enactment of the Act; and (2) Plaintiff does not have standing to sue for sexual harassment under Federal or State law because she was an independent contractor for Blaze and not an employee.

---

[6] Even if the FAA did not apply to the Arbitration Provision – which it does – this Court must enforce the Arbitration Provision under Texas law. *See Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 429 (Tex. App. – Dallas 2001, pet. denied); *Anglin v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992) (reiterating that Texas courts favor arbitration as a method of resolving legal disputes). Under Texas Civil Practices and Remedies Code § 171.021, a court shall order the parties to arbitrate on application of a party showing: (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate. Because the law strongly favors arbitration, the Texas Supreme Court has instructed courts to resolve any doubts about arbitration agreements in favor of arbitration. *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996); *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) ("Arbitration of disputes is strongly favored under the federal and state law."). As the Texas Supreme Court has stated, if a valid arbitration agreement exists and it encompasses the claims raised in the suit, the trial court has no discretion but to stay its proceedings and compel arbitration. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002).

13

First, the relevant language of the Act clearly provides: "This Act, and the amendments made by this Act, shall apply with respect to any dispute or claim *that arises or accrues on or after the date of enactment of this Act*." Act March 3, 2022, P.L. 117-90, § 3, 136 Stat. 28 (emphasis added). The Act was enacted on March 3, 2022, so it applies to any dispute or claim that arises or accrues on or after March 3, 2022. Here, Plaintiff's claims arose as early as December 3, 2021, when, as Plaintiff alleges, "the environment on the production began to become notably more hostile," and all of the episodes about which Plaintiff complains occurred before March 3, 2022. Plfs' Complaint, at ¶ 20. Therefore, Plaintiff's dispute or claims accrued prior to March 3, 2022, the Act does not apply, and Plaintiff's claims are subject to her agreement to arbitrate.

Secondly, the Act does not apply because Plaintiff worked as an independent contractor for Blaze, not an employee, and as such, she does not have standing to sue under Title VII or the TCHRA. *Lalik v. Roadrunner Dawes Freight Sys.*, No. 4:07-CV-152-A, 2008 WL 1868320, at *3 (N.D. Tex. Apr. 22, 2008) ("[P]laintiff was an independent contractor, rather than employee of defendant. Accordingly, Title VII affords him no protection, and his claims should be dismissed."); *Johnson v. Scott Fetzer Co.*, 124 S.W.3d 257, 263 (Tex. App.—Forth Worth 2003, pet. denied) ("Title VII, like the Texas statute, protects employees, not independent contractors."). The Act's definition of "sexual harassment disputes" is defined as a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal or State law. 9 U.S.C. § 401(4). Here, the applicable Federal and State law are Title VII and the TCHRA, which do not apply to independent contractors, such as Plaintiff. Given that Plaintiff cannot make a claim for sexual harassment under Title VII and/or the TCHRA, the Act cannot plausibly apply to her claims.

**E.    The present lawsuit must be dismissed, or alternatively, stayed.**

Because Blaze has demonstrated all of Plaintiff's claims involve an issue subject to arbitration, the Court *must* dismiss the case. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d

14

1161 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."); *see also Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 676 (5th Cir. 1999) (interpreting *Alford* to mean "district courts have discretion to dismiss cases in favor of arbitration"); *Armstrong v. Assocs. Int'l Holdings Corp.*, No. 06-11177, 2007 U.S. App. LEXIS 17563, at *11 (5th Cir. July 24, 2007) ("[T]he Fifth Circuit encourages district courts to dismiss cases with nothing but arbitrable issues because staying the action serves no purpose.") As explained above, Blaze has shown the Court that its Arbitration Agreement contained in the parties' TSA is valid and enforceable and that Plaintiff's claims consist of arbitrable issues under the agreement, so dismissal is mandatory.

Alternatively, the Court should stay the proceeding until a resolution is reached in arbitration. *See Guitierrez v. Acad. Corp.*, 967 F. Supp. 945, 947 (S.D. Tex. 1997); *Tittle v. Enron Corp.*, 436 F.3d 410, 417 n. 6 (5th Cir. 2006) ("a stay is mandatory at the request of a party of the dispute is arbitrable"); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008) (if a "claim falls within the scope of a valid arbitration agreement, the 'court has no discretion but to compel arbitration and stay its own proceedings.'"). Likewise, the applicable federal statute, 9 U.S.C. § 3, provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is preferable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Even if a mandatory stay under 9 U.S.C. § 3 is not applicable, the Court has inherent discretion to stay Plaintiff's Complaint and claims pending the outcome of arbitration. *See*

15

*Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752, 754 (5th Cir. 1993); *see also Morrison v. Amway Corp.*, 49 F. Supp. 2d 529, 532 (S.D. Tex. 1998) ("The power to stay proceedings [pending arbitration] is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

The parties clearly entered into a binding and enforceable Arbitration Agreement contained in the TSA, which Plaintiff, and her counsel were aware of considering Plaintiff refers to her contractual agreement in her Complaint. *See* Plfs' Complaint, at ¶¶ 16-18. Furthermore, the Arbitration Agreement contained in the TSA expressly provides, "The filing and prosecution by any Party in any court of an action alleging an Arbitrable Dispute is a breach of this Agreement, and the non-breaching party shall be entitled to recover damages for each breach through an arbitration pursuant to this paragraph." But for Plaintiff's intransigence, this Motion would not have been necessary. Plaintiff blatantly refused to comply with the parties' Arbitration Agreement and submit her claims to arbitration. As a result, Blaze was forced to incur costs in preparing and filing this Motion, and Plaintiff has wasted this Court's time and resources and Blaze's resources by forcing them to engage in unnecessary motion practice. Accordingly, Blaze is entitled to all reasonable legal fees and costs incurred in the prosecution of this Motion.

## IV.    CONCLUSION

For the reasons set forth above, Blaze respectfully requests that the Court grant its Motion to Compel and enter an Order dismissing this case and compelling arbitration of Plaintiff's claims, or alternatively, staying the case and compelling arbitration. Blaze further requests all other relief in law and equity, to which it may justly be entitled.

4864-5123-1315.5 / 118122-1002

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of March, 2023, the undersigned provided a copy of ***Defendant's Brief In Support Of Its Motion To Dismiss Or, In The Alternative, To Stay Proceedings And Compel Arbitration*** to counsel in this case via the U.S. Northern District of Texas ECF filing system as follows:

Kurt A. Schlichter
SCHLICHTER, SHONACK & KEETON, LLP
kas@sandsattorneys.com
2381 Rosecrans Ave., Ste. 326
El Segundo, California 90245
Phone: (310) 643-0111
Fax: (310) 643-1638

James A. Pikl
SCHEEF & STONE, LLP
Jim.pikl@solidcounsel.com
2600 Network Blvd., Ste. 400
Frisco, Texas 75034
Phone: (214) 472-2100
Fax: (214) 472-2150

*/s/ Celeste R. Yeager*
Celeste R. Yeager

17