**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SYDNEY WATSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3:23-CV-00279-B** |
| | § | |
| **BLAZE MEDIA, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**APPENDIX IN SUPPORT OF BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL
ARBITRATION**

| EXHIBIT | DESCRIPTION |
|---|---|
| **1** | Tyler Cardon Declaration |
| **A** | TSA Agreement |
| **B** | Certificate of Completion |
| **C** | December 4, 2021, text exchange |
| **J** | Screen Shot of Google Doc for October 4, 2021 |
| **D** | September 11, 2021, text exchange |
| **E** | January 3, 2022, Signal Chat |
| **F** | January 18, 2022, text exchange |
| **G** | May 2022 Tweet |
| **2** | Gaston Mooney Declaration |
| **H** | June 9, 2022, text exchange |
| **3** | Celeste Yeager Declaration |

| I | March 15, 2023, screen shot |
|---|---|
| K | JAMS excerpt |

Dated: March 23rd, 2023                    Respectfully submitted,

*/s/ Celeste R. Yeager*
Celeste R. Yeager
Texas State Bar No. 00797715
Courtney E. Jackson
Texas State Bar No. 24116560
LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX 75201
cyeager@littler.com
cejackson@littler.com
(214) 880-8100 (Telephone)
(214) 880-0181 (Facsimile)

*s/ Jordan W. Cowman*
Jordan W. Cowman
Texas State Bar No. 04932800
GREENBERG TRAUIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Jordan.cowman@gtlaw.com
(214) 665-3600 (Telephone)
(214) 665-5952 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 23rd day of March, 2023, the undersigned provided a copy of *Appendix In Support of Brief In Support of Defendant's Motion To Dismiss Or, In The Alternative, To Stay Proceedings And Compel Arbitration* to counsel in this case via the U.S. Northern District of Texas ECF filing system as follows:

| | |
|---|---|
| Kurt A. Schlichter | James A. Pikl |
| SCHLICHTER, SHONACK & KEETON, LLP | SCHEEF & STONE, LLP |
| kas@sandsattorneys.com | Jim.pikl@solidcounsel.com |
| 2381 Rosecrans Ave., Ste. 326 | 2600 Network Blvd., Ste. 400 |
| El Segundo, California 90245 | Frisco, Texas 75034 |
| Phone: (310) 643-0111 | Phone: (214) 472-2100 |
| Fax: (310) 643-1638 | Fax: (214) 472-2150 |

*/s/ Celeste R. Yeager*
Celeste R. Yeager

4891-6163-7465.2 / 118122-1002

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SYDNEY WATSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3:23-CV-002790-B** |
| | § | |
| **BLAZE MEDIA LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**DECLARATION OF TYLER CARDON IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS
AND COMPEL ARBITRATION**

I, Tyler Cardon, declare as follows:

1.      I have personal knowledge of the facts set forth herein.

2.      I am over eighteen years of age and competent to testify to the matters stated in this declaration.

3.      I am employed by Blaze Media LLC ("Blaze" or "Defendant") as Chief Executive Officer.

4.      Blaze is a for-profit media company that engaged in the interstate activities of news and entertainment program production, broadcasting and streaming; its activities are not divided by state lines and are subject to federal regulations.

5.      In my capacity as Chief Executive Officer, I am familiar with the Talent Services Agreements it has with its independent contractors, including the Talent Service Agreement between Blaze and Plaintiff Sydney Watson.

6.     Ms. Watson and Blaze entered into a Talent Services Agreement ("TSA"). Ms. Watson electronically signed the TSA effective May 1, 2021, thus agreeing to all of its terms. Attached to this Declaration as <u>Exhibit A</u> is a true and correct copy of the TSA, which has been redacted pursuant to the TSA's confidentiality provision. The talent services agreement was emailed to Ms. Watson, and she signed the document via DocuSign. Attached to this Declaration as <u>Exhibit B</u> is a true and correct copy of the Certificate of Completion for the DocuSign electronic signature on the TSA.

7.     Attached to this Declaration as <u>Exhibit C</u> is a true and correct copy of a text message exchange between Ms. Watson and me on December 4, 2021.

8.     Ms. Watson told me she would usually "say no right out of the gate" when she thought a proposed guest was a bad idea and that she "let the Nick thing slide" and added she was "glad [they] did to an extent." She also told me I could trust that she was "marking hardcore vetoes" whenever she felt a proposed guest was a bad fit.

9.     Prior to Nick Fuentes appearing on "You Are Here," ("YAH"), Ms. Watson answered a viewer question during the September 15, 2021, episode of the show in regards to whether Mr. Fuentes would be appearing. Ms. Watson stated, "I just disagree with a  bunch of his stances" but that Ms. Watson was not "anti-platforming people" and that Ms. Watson "[does not] care" because "you interrogate ideas and if it's a bad idea, you use a better idea to beat it, I don't understand, I'm fine with that."

10.     It was plaintiff who added Mr. Murphy's name and contact information to a list of guests to book for the producer to arrange for YAH and for Mr. Murphy to come on the show. Attached to this Declaration as <u>Exhibit J</u> is a fair and accurate depiction of the edits Ms. Watson made to the shared Google Doc adding Mr. Murphy's contact information. After Mr. Murphy's

appearance, Plaintiff created an entire merchandise line based on the episode featuring his appearance. During the episode, Mr. Murphy said to Plaintiff "f\*\*k you! Heartfelt." Plaintiff then created designs for sweatshirts, hoodies, t-shirts, and coffee mugs branded "Heartfelt," which are currently offered for sale on Plaintiff's website.

11.     Attached to this Declaration as <u>Exhibit D</u> is a true and correct copy of a text message exchange between Ms. Watson and me on September 11, 2021.

12.     Attached to this Declaration as <u>Exhibit E</u> is a true and correct copy of a Signal Chat between Ms. Watson, Elijah Schaffer, and me on January 3, 2022.

13.     Attached to this Declaration as <u>Exhibit F</u> is a true and correct copy of a text message exchange between Ms. Watson and me on January 18, 2022.

14.     On January 18, 2022, Ms. Watson claimed that she had "some great ideas" for the show.

15.     Attached to this Declaration as <u>Exhibit G</u> is a true and correct copy of a tweet by Ms. Watson on May 14, 2022.

16.     Ms. Watson and her co-host and his wife were friends outside of work long before Ms. Watson agreed to co-host YAH as an independent contractor. They had a falling out in their personal relationship when Mr. Schaffer and his wife did not like Ms. Watson's boyfriend, an event wholly unrelated to and outside her co-hosting YAH in accordance with the TSA.

17.     When Ms. Watson informed me she no longer wanted to co-host YAH, she said it was because she no longer trusted her co-host and no longer wanted to be associated with him or YAH. She emphasized that her frustrations related only to her co-host and further added that she enjoyed working with everyone else at the network. Ms. Watson never alleged to have been subject to sexual harassment or discrimination by her co-host or anyone else associated with YAH.

18.     Blaze then offered Ms. Watson an opportunity to continue working with Blaze as an independent contractor by developing another show for her to host either alone or with a different co-host. Ms. Watson agreed and took some time off while they were discussing such other project. Blaze put YAH on hiatus and continued to pay Ms. Watson her fee while they discussed ideas and concepts for other such other show.

19.     Blaze did not learn about Ms. Watson's allegations of underlying sexual harassment associated with YAH from 2021, and that she did not intend to participate in a new show with Blaze until receiving a demand letter from Plaintiff's attorney on August 12, 2022.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: March  23 , 2023


_____

TYLER CARDON

# EXHIBIT A

DocuSign Envelope ID: C1298A3B-3C99-4AD2-9736-A58A7118983A

**Talent Services Agreement**

This TALENT SERVICES AGREEMENT (this "Agreement") is made effective as of May 1, 2021 (the "Effective Date"), by and between Blaze Media LLC, a Delaware limited liability company ("Company") and Sydney Watson ("Talent").

WHEREAS, Company owns, operates or otherwise controls (or throughout the Term may acquire or develop) various channels, platforms and other means to distribute audio and visual content, including but not limited to a subscription digital distribution platform currently known as BlazeTV, websites (e.g. blazemedia.com, theblaze.com), Company branded digital linear television channel, Company branded or controlled RSS feeds, and related social media channels, including, without limitation, Facebook, Instagram, YouTube, and Twitter, and any other channels, platforms or distribution means owned, controlled and branded by Company in all devices, medium, forms of media or technology now known or hereafter devised (all together the "Network"); and

WHEREAS, the Company wishes to engage Talent for services pursuant to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing, and pursuant to the terms, covenants, and agreements set forth herein, Company and Talent hereby agree as follows:



APP 007



DocuSign Envelope ID: C1298A3B-3C99-4AD2-9736-A58A7118983A



APP 009

DocuSign Envelope ID: C1298A3B-3C99-4AD2-9736-A58A7118983A



APP 010



10.    <u>Standard Terms and Conditions</u>. The parties hereto agree to be bound by the Standard Terms and Conditions attached hereto and which are incorporated herein by this reference. In the event of any direct conflict between Standard Terms and Conditions, and the terms of this Agreement shall control.



[signature page to follow]

DocuSign Envelope ID: C1298A3B-3C99-4AD2-9736-A58A7118983A

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the date first set forth above

**BLAZE MEDIA LLC**                                    **TALENT**

_Tyler Cardon_                                          _Sydney Watson_
536AF1773FDE491...                                      22F20EE7962B488...

Tyler Cardon, Chief Executive Officer                   Sydney Watson


Address:                                                Address:
6301 Riverside Drive, Building One                      3917 Villaflora Drive Apt 7302
Irving, TX 75039-3531
Attn: Tyler Cardon, CEO                                 Fort Worth, Texas 76137
Email: tcardon@blazemedia.com
                                                        Email: sydneyisthesenate@gmail.com

With a copy to:
9820 Willow Creek Road, Suite 295
San Diego, CA 92131
Attn: General Counsel
Email: legal@gxm.com

1

APP 012

DocuSign Envelope ID: C1298A3B-3C99-4AD2-9736-A58A7118983A

**TALENT ENGAGEMENT AGREEMENT**
**STANDARD TERMS AND CONDITIONS**





**3.** **Confidentiality and Public Statements.**

a.        Except only as required in connection with each party's (i) duties hereunder, (ii) advisors and representatives who are bound by duties of confidentiality with respect to such information, or (iii) as required by law (provided that the disclosing party is notified of any such disclosure and confidential treatment, or similar protection, is requested and sought), neither party will , at any time during the Term and thereafter, in any manner, either directly or indirectly, use, divulge, disclose, or communicate to any person or entity, in any manner whatsoever, any Confidential Information of any kind, nature. For purposes of this Agreement, "Confidential Information" mean all confidential, proprietary, or commercially sensitive data, materials, and/or trade secrets of either party or its affiliates, including, without limitation, all corporate, financial, economic, legal or other information or knowledge generally concerning either party or any of its affiliates, including, without limitation, the names, identities and identifying information of all employees, officers, managers, members, independent contractors and agents of either party and its affiliates, the operations and proposed future operations of either party and its affiliates, information respecting processes, photographs, intellectual property, know-now and trade secrets of either party and its affiliates, Talent's compensation or other terms of Talent's engagement, and any other information related to either party or its affiliates that is reasonably expected to be confidential, whether disclosed to the other party directly or indirectly, and whether disclosed verbally, by visual inspection or in the form of written material. computer data or programs, or otherwise, and whether obtained before or after the execution of this Agreement, regardless of whether such information is specifically identified, described and/or marked as Confidential Information. Confidential Information excludes information that is or becomes generally available to the public (other than as a result of a disclosure by Talent in violation of this Agreement). This Section 3 will survive the expiration or termination of this Agreement.

b.        Upon written request from the disclosing party, the receiving party shall deliver to the disclosing party all copies, whether written, in the form of computer data or otherwise, of the Materials

APP 013

DocuSign Envelope ID: C1298A3B-3C99-4AD2-9736-A58A7118983A

and all documents which include or embody the Confidential Information and are in the receiving party's possession. In such event, the receiving party and any persons or entities to whom the receiving party has provided Confidential Information shall not retain any copies of any Confidential Information.

c.      The parties will consult with each other prior to issuing any press release or making any public statement with respect to this Agreement, and will not issue any such press release or public statement without prior written consent of both parties, which consent either party may withhold in its sole discretion.





DocuSign Envelope ID: C1298A3B-3C99-4AD2-9736-A58A7118983A







i.    <u>Governing Law; Arbitration</u>. This Agreement shall be governed by and construed in accordance with the laws of the state of Texas. The parties agree that any dispute between them regarding any matter related to or arising out of this agreement (an "<u>Arbitrable Dispute</u>") shall be resolved by binding, confidential arbitration in Dallas, Texas, by a single arbitrator from Judicial Arbitration & Mediation Services, Inc. ("<u>JAMS</u>"), who must be a retired Judge, having served on any federal court located in Texas, or the Dallas superior court, or a higher court of the states of Texas. The rules and procedures for JAMS, including JAMS's Emergency Relief Procedures, shall govern the proceedings, including the selection of the arbitrator.  The parties each hereby waive any claim that Dallas, Texas is an inconvenient forum, or that either personal or subject matter jurisdiction is lacking in Dallas, Texas. Without limiting the generality of the foregoing, the parties each agree that all questions, as to whether or not an issue constitutes a dispute subject to arbitration under this section, shall be resolved by arbitration in accordance with this section. The arbitrator shall have the power to impose any sanction against any party permitted by Texas law. The filing and prosecution by any Party in any court of an action alleging any Arbitrable Dispute is a breach of this Agreement, and the non-breaching party shall be entitled to recover damages for such breach through an arbitration pursuant to this paragraph. The occurrence of such arbitration proceedings shall be maintained as confidential information of each of the parties. The arbitrator shall render a single written decision setting forth an award and stating with reasonable detail the reasons for the decision reached. Any award issued as a result of such arbitration shall be final and binding, and a judgment rendered thereon may be entered in any court having jurisdiction thereof.





DocuSign Envelope ID: C1298A3B-3C99-4AD2-9736-A58A7118983A



# EXHIBIT B



## Certificate Of Completion

Envelope Id: C1298A3B3C994AD29736A58A7118983A                                    Status: Completed
Subject: Please DocuSign: Blaze Media - Sydney Watson - Talent Services Agreement - EXECUTION COPY v2.pdf
Source Envelope:
Document Pages: 12                          Signatures: 2                          Envelope Originator:
Certificate Pages: 5                        Initials: 0                            Anita Belokopytova
AutoNav: Enabled                                                                   3993 Howard Hughes Pkwy,, Ste 450
EnvelopeId Stamping: Enabled                                                       Las Vegas, NV  89169
Time Zone: (UTC-06:00) Central Time (US & Canada)                                  anita@gxm.com
                                                                                   IP Address: 76.91.211.42

## Record Tracking

Status: Original                            Holder: Anita Belokopytova            Location: DocuSign
         4/7/2021 6:21:41 PM                        anita@gxm.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Sydney Watson<br>sydneyisthesenate@gmail.com<br>Security Level: Email, Account Authentication (None) | *Sydney Watson*<br>22F20EE79B2B488...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 23.126.48.25 | Sent: 4/7/2021 6:23:56 PM<br>Viewed: 4/8/2021 1:15:54 PM<br>Signed: 4/8/2021 1:17:51 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 4/8/2021 1:15:54 PM<br>    ID: f43be52c-757c-4da0-995f-f8188922b8fa | | |
| Tyler Cardon<br>tcardon@blazemedia.com<br>CEO<br>Security Level: Email, Account Authentication (None) | *Tyler Cardon*<br>536AF1773FDE491...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 64.88.200.162 | Sent: 4/8/2021 1:17:52 PM<br>Viewed: 4/8/2021 1:18:32 PM<br>Signed: 4/8/2021 1:18:52 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 4/8/2021 1:18:32 PM<br>    ID: 590f3de4-f161-4175-9e59-c5f0b0263e92 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Angela Bandich<br>Angela@gxm.com<br>Corporate Counsel<br>Galaxy Media LLC<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 4/8/2021 1:18:53 PM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |

APP 020

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/7/2021 6:23:56 PM |
| Certified Delivered | Security Checked | 4/8/2021 1:18:32 PM |
| Signing Complete | Security Checked | 4/8/2021 1:18:52 PM |
| Completed | Security Checked | 4/8/2021 1:18:53 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 2/26/2020 5:02:31 PM
Parties agreed to: Sydney Watson , Tyler Cardon

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Blaze Media LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Blaze Media LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: ttuttle@blazemedia.com

**To advise Blaze Media LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at ttuttle@blazemedia.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Blaze Media LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to ttuttle@blazemedia.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Blaze Media LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to ttuttle@blazemedia.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Blaze Media LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Blaze Media LLC during the course of your relationship with Blaze Media LLC.

# EXHIBIT C

I've already talked to Elijah. Pls give me a heads up if your instincts are ever telling you the guest is a bad fit.

Usually when I think it's a horrible idea, I say no right out of the gate and Brandon typically doesn't book them.
I let the Nick thing slide and I'm glad we did to an extent. My audience was deeply upset and asked us to never have him on again. And, frankly, I'm happy to oblige. I actually don't mind the women haters. But his audience is what makes the whole experience so horrible. They're a little swarm of demons.

100%

Like I said - shoot down bad ideas with good ideas. Half the issue is that we try to hide undesirable views rather than pulling them into the light and seeing them for what they are

**SW**

Sydney >

I let the Nick thing slide and I'm glad we did to an extent. My audience was deeply upset and asked us to never have him on again. And, frankly, I'm happy to oblige. I actually don't mind the women haters. But his audience is what makes the whole experience so horrible. They're a little swarm of demons.

100%

Like I said – shoot down bad ideas with good ideas. Half the issue is that we try to hide undesirable views rather than pulling them into the light and seeing them for what they are

I agree 100%

♥

Sorry about this one, Tyler. It was tried. Never again. Trust that I am out here doing hardcore vetoes when I think someone is a fuckwit.

APP 027

# EXHIBIT J

**CALL TO BE BOOKED**

Eliza Bleu: ██████████████████

David Reaboi:

Malcolm Flex: ████████████████

Austin Petersen: ██████████████

Jacki Daily (to be booked with David Reaboi): she works for us, so someone at Blaze probz has her info

Brandi Love: through her agent, ██████████

Jack Murphy: ████████

Bridget Phetasy: ██████████

Chris Kohls: ████████

APP 029

# EXHIBIT D



Sydney >

Sep 11, 2021 at 2:29 PM

I'm worried we can't sustain this 🤣

I really want some leftists on. Or people we don't agree with. The same same same *agree agree agree* stuff is a bit zzzz

Sep 11, 2021 at 3:59 PM

I think that would be great!

APP 031

# EXHIBIT E

5:43

**Yeehaw**

**Elijah Schaffer** — Jan 3, 2022
Just touching base on the show tonight and filling you in. Also, via Corey, do you have time right after? He leaves tn even if 10-15 mins      12:46 PM

I'd love to get more time with him, if possible.      12:46 PM

**Elijah Schaffer**
He has time, just leaves tonight 8pm, he's coming to help fine tune my studio a little before we shoot, so we will be there at 2pm      12:48 PM

**Sydney Watson**
Sounds good, fam.      12:56 PM

Getting great feedback 🥰      9:33 PM

**Elijah Schaffer**
Me too actually

About the whole show      9:39 PM

**Sydney Watson**

Message

# EXHIBIT F

SW

Sydney ›

Tue, Jan 18, 2:11 PM

Any possibility to push this to tomorrow? Sorry Tyler. We're all over the ship today.

*shop

Should be fine. 4:30?

Yes!

You doing okay?

I'm actually doing great!!

Love to hear it

Totally chockers with work though and I REALLY need to hire someone to help. But good problem to have

I thought last night's episode was pretty decent too btw, despite elijer being stuck in SC

# EXHIBIT G

**Dr. Sydney Watson**
@SydneyLWatson

Replying to @jrowland11

Blaze and I are still connected and hopefully we can produce something awesome. Sometimes things don't go to plan, but that's life. :)

5:36 PM · 5/14/22 · Twitter for Android

**2** Retweets **1** Quote Tweet **404** Likes

APP 037

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SYDNEY WATSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3:23-CV-002790-B** |
| | § | |
| **BLAZE MEDIA LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**DECLARATION OF GASTON MOONEY IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS
AND COMPEL ARBITRATION**

I, Gaston Mooney, declare as follows:

1.      I have personal knowledge of the facts set forth herein.

2.      I am over eighteen years of age and competent to testify to the matters stated in this declaration.

3.      I am employed by Blaze Media LLC ("Blaze" or "Defendant") as President.

4.      Plaintiff Sydney Watson led Blaze to believe she planned to continue working with it as she continually communicated with me about a potential podcast and its content.

5.      Attached to this Declaration as Exhibit H is a true and correct copy of a text message exchange between Ms. Watson and me on June 9, 2022.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: March __23__, 2023

_____
GASTON MOONEY

# EXHIBIT H

New Message                Cancel

To: Sydney Watson

> Hey, not trying to bother ya or pressure. I promise.
>
> We just all need to connect to figure out contract adjustments and or next steps on the pod (we are still interested).

Thu, Jun 9, 17:24

I'm not ignoring you, I promise. :) Just all over the place! Still want to see what yall had in mind before any other meetings go down!

Fri, Jun 10, 18:26

> Sorry...meant to text you back before now.
>
> We for sure what to have you as a contributor and your content on btv platform.
>
> Re syd pod and such, we wanted to follow your lead and be supportive. We can work on some other specifics but don't want to override your content vision.

 

Text Message

       

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SYDNEY WATSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3:23-CV-002790-B** |
| | § | |
| **BLAZE MEDIA LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**DECLARATION OF CELESTE YEAGER IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS
AND COMPEL ARBITRATION**

I, Celeste Yeager, declare as follows:

1.      I am an attorney admitted to practice in the Northern District of Texas and the courts of the State of Texas. I am a shareholder at the law firm of Littler Mendelson, P.C. and counsel of record for Defendant Blaze Media LLC in this matter.

2.      I have personal knowledge of the facts set forth herein.

3.      Attached as <u>Exhibit I</u> is a fair and accurate representation of Plaintiff Sydney Watson's website on Wednesday, March 15, 2023, at 10:24am.

4.      Attached as <u>Exhibit K</u> is a true and correct copy of an excerpt from the 2021 Judicial Arbitration & Mediation Services, Inc.'s ("JAMS") Comprehensive Arbitration Rules & Procedures, accessed via JAM's website at <u>JAMS_Comprehensive_Arbitration_Rules-2021.pdf (jamsadr.com)</u>.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: March 23, 2023

_____
CELESTE YEAGER

# EXHIBIT I



**Heartfelt - Short-Sleeve Unisex T-Shirt**
$25.99

Add to Cart



**Heartfelt - Unisex hoodie**
$39.99

Add to Cart



**Heartfelt - Unisex Sweatshirt**
$34.99



**Heartfelt - White glossy mug**
$19.99

# EXHIBIT K

**8**

Case 3:23-cv-00279-B   Document 10   Filed 03/23/23   Page 51 of 51   PageID 114
JAMS Comprehensive Arbitration Rules & Procedures   •   Effective June 1, 2021

on the other Parties. Any response to the new claim shall be made within fourteen (14) calendar days after service of such claim. After the Arbitrator is appointed, no new or different claim may be submitted, except with the Arbitrator's approval. A Party may request a hearing on this issue. Each Party has the right to respond to any new or amended claim in accordance with Rule 9(c) or (d).

## RULE 11
## Interpretation of Rules and Jurisdictional Challenges

(a)   Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b)   Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(c)   Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS.

(d)   The Arbitrator may, upon a showing of good cause or *sua sponte*, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may be altered only in accordance with Rules 22(i) or 24.

## RULE 12
## Representation

(a)   The Parties, whether natural persons or legal entities such as corporations, LLCs or partnerships, may be represented by counsel or any other person of the Party's choice. Each Party shall give prompt written notice to the Case Manager and the other Parties of the name, address, telephone number and email address of its representative. The representative of a Party may act on the Party's behalf in complying with these Rules.

(b)   Changes in Representation. A Party shall give prompt written notice to the Case Manager and the other Parties of any change in its representation, including the name, address,

telephone number and email address of the new representative. Such notice shall state that the written consent of the former representative, if any, and of the new representative, has been obtained and shall state the effective date of the new representation.

(c)   The Arbitrator may withhold approval of any intended change or addition to a Party's legal representative(s) where such change or addition could compromise the ability of the Arbitrator to continue to serve, the composition of the Panel in the case of a tripartite Arbitration or the finality of any Award (on the grounds of possible conflict or other like impediment). In deciding whether to grant or withhold such approval, the Arbitrator shall have regard to the circumstances, including the general principle that a Party may be represented by a legal representative chosen by that Party, the stage that the Arbitration has reached, the potential prejudice resulting from the possible disqualification of the Arbitrator, the efficiency resulting from maintaining the composition of the Panel (as constituted throughout the Arbitration), the views of the other Party or Parties to the Arbitration and any likely wasted costs or loss of time resulting from such change or addition.

## RULE 13
## Withdrawal from Arbitration

(a)   No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5), except by written agreement of all Parties to the Arbitration.

(b)   A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and the Arbitrator. However, the opposing Parties may, within seven (7) calendar days of service of such notice, request that the Arbitrator condition the withdrawal upon such terms as he or she may direct.

## RULE 14
## *Ex Parte* Communications

(a)   No Party may have any *ex parte* communication with a neutral Arbitrator, except as provided in section (b) of this Rule. The Arbitrator(s) may authorize any Party to communicate directly with the Arbitrator(s) by email or other written means as long as copies are simultaneously forwarded to the JAMS Case Manager and the other Parties.