IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SYDNEY WATSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 3:23-CV-00279-B |
| v. | § | |
| | § | |
| BLAZE MEDIA LLC, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF SYDNEY WATSON'S BRIEF IN SUPPORT OF HER RESPONSE TO DEFENDANT BLAZE MEDIA LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

Dated: April 10, 2023

Respectfully submitted,

SCHLICHTER, SHONACK & KEETON, LLP

By: */s/ Kurt A. Schlichter*
Kurt A. Schlichter
State Bar No. 24104610
kas@ssandkattorneys.com
2381 Rosecrans Ave., Ste. 326
El Segundo, California 90245
Phone: (310) 643-0111
Fax: (310) 643-1638

SCHEEF & STONE, LLP

James A. Pikl
State Bar No. 16008850
jim.pikl@solidcounsel.com
2600 Network Blvd., Ste. 400
Frisco, Texas 75034
Phone: (214) 472-2100
Fax: (214) 472-2150

ATTORNEYS FOR PLAINTIFF
SYDNEY WATSON

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

I.      INTRODUCTION.......................................................................................... 1

II.     THE ENDING FORCED ARBITRATION OF SEXUAL ASSAULT AND
SEXUAL HARASSMENT ACT (TITLE 9 U.S.C. SECTION 401, ET SEQ.) REQUIRES
THAT THE COURT DENY THE MOTION ........................................................ 4

III.    THE SUBJECT ARBITRATION AGREEMENT DOES NOT COMPEL
ARBITRATION OF SEXUAL HARASSMENT LAWSUITS............................................ 12

IV.     IF ARBITRATION IS COMPELLED, THE PROPER COURSE OF ACTION IN
THAT INSTANCE WOULD BE TO STAY THE MATTER ............................................ 14

V.      TO THE EXTENT THAT DEFENDANT BRINGS THIS MOTION UNDER
FRCP 12(b)(1) OR (6), IT SHOULD BE DENIED.............................................. 15

VI.     DEFENDANT'S CLAIM FOR ATTORNEY'S FEES SHOULD BE DENIED .... 18

VII.    CONCLUSION ........................................................................... 20

CERTIFICATE OF SERVICE ................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*AMTRAK v. Morgan* 536 U.S. 101, 115-117 [(2002) 122 S.Ct. 2061, 153 L.Ed.2d 106]) ........ 6, 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). ............................. 16

*Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 127 S.Ct. 1955,167 L.Ed.2d 929 (2007) . 16

*Carhon Energy Grp., LLC v. Cliveden Petro. Co.,*  2023 U.S.Dist.LEXIS 6016, at *16 (S.D.Tex. Jan. 12, 2023, No. H-22-170). ................................................................................................. 19

*Ciarrocchi v. INPEX Ams., Inc.,*  2023 U.S.Dist.LEXIS 9878, at *6 (S.D.Tex. Jan. 20, 2023, No. 4:20-CV-03943)............................................................................................................... 9

*City of Houston v. Smith,*  2015 Tex.App.LEXIS 8750, at *10 (Tex.App.—Houston (1st Dist.), Aug. 20, 2015, No. 01-14-00789-CV):........................................................................................ 9

*Conley v. Gibson*, 355 U.S. 41 (1957). ...................................................................................... 3, 16

*Deal v. State Farm Cnty. Mut. Ins. Co. of Texas,* 5 F.3d 117 (5th Cir. 1993) ............................... 9

*Diggs v. Harris Hosp.—Methodist, Inc.*, 847 F.2d 270 (5th Cir. 1988) ........................................ 8

*Elness Swenson Graham Architects, Inc. v. RLJ II–C Austin Air, LP* (Tex.Ct.App. 2017, pet. denied) 520 S.W.3d 145........................................................................................................... 18

*Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ................................ 11, 12

*Heath v. Bd. of Supervisors for the S. Univ. & Agric. & Mech. College* 850 F.3d 731 (5th Cir. 2017) ................................................................................................................................ 6

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) ........................................... 16

*In re Weekley Homes, L.P.,* 180 S.W.3d 127 (Tex.2005)............................................................. 12

*Juino v. Livingston Parish Fire Dist. No. 5,* 717 F.3d 431 (5th Cir. 2013). ........................... 1, 8, 9

*Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308 (Tex.2002) ................................... 9

*Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242 (5th Cir. 1997) .............................................. 3, 16

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) ............... 16

*Martinez v. Bryson,* 2021 U.S.Dist.LEXIS 13879, at *4-5 (N.D.Tex. Jan. 26, 2021, No. 3:20-
CV-1840-B) .................................................................................................................. 16

*Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76
(1995) ........................................................................................................................... 14

*Norman v. Apache Corp.*, 19 F.3d 1017 (5th Cir. 1994) ............................................................. 11

*O'Connor v. City of Newark*, 440 F.3d 125 (3d Cir. 2006) .......................................................... 6

*Rhyan v. DW Direct, Inc.,* 2020 U.S.Dist.LEXIS 193625, at *10 (S.D.Tex. Oct. 19, 2020, No.
4:19-CV-3599). ........................................................................................................... 14

*Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).................................... 12

*Taylor Elec. Servs. Inc. v. Armstrong Elec. Supply Co.,* 167 S.W.3d 522 (Tex.App.—Fort Worth
2005, no pet.). ........................................................................................................... 4, 18

*Thompson v. Travelers Indem. Co. of Rhode Island*, 789 S.W.2d 277 (Tex. 1990)...................... 9

*Worrall v. River Shack LLC,* 2023 U.S.Dist.LEXIS 48296, at *18 (N.D.Tex. Mar. 22, 2023, No.
3:22-CV-0392-B)......................................................................................................... 11

## RULES

Federal Rule of Civil Procedure 12(b)(1) ........................................................................... 2, 15, 16

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 2, 3, 15, 16, 17

Federal Rule of Civil Procedure 12(c) ...................................................................................... 17

Federal Rule of Civil Procedure 12(d)....................................................................................... 17

Federal Rule of Civil Procedure 15(a)(2) ................................................................................... 16

## STATUTES

U.S. Code Title 9 §3 ................................................................................................ 15

U.S. Code Title 9 §402 ................................................................................ 2, 5, 8, 18

U.S. Code Title 9 §401 .............................................................................................. 1

## OTHER AUTHORITIES

Public Law 117-90 (March 3, 2022) §3, 136 Stat. 28 .................................................. 6

House Report 4445, H.R. Rep. No. 117-234 (2022).......................................... 4, 13, 14

Sydney Watson ("Watson" or "Plaintiff") hereby submits her brief in support of her Response to The Blaze Media's ("Blaze" or "Defendant") Motion to Dismiss or, in the alternative, to Stay Proceedings and Compel Arbitration, and respectfully shows as follows:

## I.     <u>INTRODUCTION</u>

The Motion by defendant The Blaze Media, LLC should be denied in its entirety. While it is understandable that this media company wishes to place this embarrassing matter outside of public scrutiny, the law does not allow it to do so. The Blaze is not entitled to compel plaintiff Sydney Watson to arbitrate her discrimination and retaliation claims because 1) The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (Title 9 U.S.C. Section 401, et seq.) (the "Act") bars forced arbitration of Ms. Watson's claims, and 2) the subject Arbitration Agreement does not compel arbitration of sexual harassment lawsuits.

Ms. Watson's sexual harassment claims occurred and expanded after the Act's effective date of March 3, 2022, and the pleadings and accompanying declaration of Ms. Watson (Appendix Ex. 1) demonstrate that two of the four counts arose entirely after that date. As such, the Act applies. Next, the law does not declare open season for sexual and other harassment of vulnerable individuals based on independent contractor status, but regardless, the Act applies because the facts pleaded and set forth in Ms. Watson's concurrent declaration demonstrate that she is not an "independent contractor." Simply declaring a worker an "independent contractor" does not make her one. The Fifth Circuit employs an "economic realities/common law control test" when determining if a party actually is an "independent contractor." *Juino v. Livingston Parish Fire Dist. No. 5,* 717 F.3d 431, 433-435 (5th Cir. 2013). The realities of her work situation demonstrate that Ms. Watson was not an "independent contractor."

Even if the Act did not bar compelling mediation of this dispute at the threshold, the text

of the Arbitration Agreement within the Talent Services Agreement ("TSA") does not include sexual harassment claims nor did these statutory rights arise from the TSA. The Arbitration Agreement cannot be read broadly, in light of the Act, to include such claims. Defendant asserts that "[t]he strong federal policy favoring arbitration requires this Court to enforce the Arbitration Agreement and compel Plaintiff to arbitrate her claims" (Motion, p. 6), but this is no longer so. The Act sets out a strong federal policy *disfavoring* arbitration of sexual harassment claims; all the authority defendant cites was effectively superseded as to sexual harassment claims in 2022. This matter should be, and must be, heard by a jury of Texas citizens.

Defendant also demands that the question be resolved by an arbitrator and asserts Texas law in favor do doing so. However, the Act is unequivocal – the question of the applicability of the Act is expressly vested in the hands of the District Court. (9 U.S.C ¶ 402(b)) Further, *federal law* alone applies to govern the question. *Id.*

While defendant seeks to dismiss the action if arbitration is compelled, the proper course of action in that instance would be to stay the matter since the statute so provides, and because a court judgment will likely need to be entered following arbitration regardless.

Defendant is unclear on the basis of its Motion as to FRCP 12(b)(6), "failure to state a claim upon which relief can be granted." Defendant's notice of motion references Rule 12(b)(6) only in a footnote, as does the brief – but defendant fails to offer any argument that the thorough and detailed complaint fails to state a claim.[1] There being no clear request nor any argument for a dismissal on the merits, the Court should not consider doing so on that ground. Even if the Court did treat this as a substantive motion to dismiss, the Court would have to deny the Motion. This Court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the

---

[1] Defendant likewise mentions Rule 12(b)(1) ("lack of subject-matter jurisdiction") in the same footnotes and never argues it in its brief.

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Ms. Watson's extensive allegations regarding the closely directed nature of her work – she came to the studio every day and submitted to direction and close editorial control by The Blaze – if believed by a trier of fact, would entitle her to relief. To the extent Rule 12(b)(6) is asserted, it fails on the basis of those allegations. If granted, Ms. Watson would be entitled to file an amended Complaint to address whatever weaknesses the Complaint has – though, because the Motion offers no argument regarding the application of Rule 12(b)(6), Ms. Watson cannot know defendant's objections so that she could make a further offer of proof of facts she could amend to add other than those facts set forth in her concurrent declaration and Complaint.

But the decision by defendant to offer detailed evidence from outside the pleadings that addresses the merits of the case – a long recitation of purported facts attempting to show that Ms. Watson did not suffer hostile work environment harassment – creates an invitation for the Court to convert this Rule 12(b)(6) motion into a summary judgment motion under Rule 56. The Court should decline it. As discussed *supra*, the Motion makes no delineation of the substantive matters at issue and therefore there is no reasonable notice. Further, Ms. Watson has had no ability to conduct discovery, including the depositions of multiple present and past workers at The Blaze who could contradict the facts offered in the Motion. Regardless, Ms. Watson has offered admissible evidence demonstrating a triable issue of material fact exists as to the substantive issues in the case. Any attempt to invoke Rule 56 must be denied.

If defendant is not seeking summary judgment, it is then unclear why it offered the extensive facts on the substance of the claims that are totally unrelated to the narrow question of arbitrability. It would be improper to use the Motion as an avenue to argue the merits to the court of public opinion in the event the case is withdrawn from further public scrutiny, but that appears

to be the only obvious rationale for including those facts in the Motion.

Finally, without citation to supporting authority – because there is none – defendant demands attorney's fees should this Motion succeed. This is a legitimate dispute over the applicability of an arbitration clause, and this Motion to compel arbitration will not be a final determination on the merits, meaning even if it wins this Motion, defendant will not be the "prevailing party." *See Taylor Elec. Servs. Inc. v. Armstrong Elec. Supply Co.,* 167 S.W.3d 522, 532 (Tex.App.—Fort Worth 2005, no pet.). This claim should be denied even if the Court grants other relief.

The Court should deny the Motion in its entirety. Should the Court be inclined to grant the Motion in whole or in part, it should first grant Plaintiff leave to amend.

## II.    THE ENDING FORCED ARBITRATION OF SEXUAL ASSAULT AND SEXUAL HARASSMENT ACT (TITLE 9 U.S.C. SECTION 401, ET SEQ.) REQUIRES THAT THE COURT DENY THE MOTION

The Act bars compelled arbitration of this claim. The Act was written expressly to prevent defendants from depriving wronged, harassed plaintiffs of their right to a jury trial and establishes a clear policy against the arbitration of sexual harassment disputes like this.

The legislative history of the Act is instructive:

H.R. 4445 would restore access to justice for millions of victims of sexual assault or harassment who are currently locked out of the court system and are forced to settle their disputes against companies in a private system of arbitration that often favors the company over the individual. *H.R. Rep*. No. 117-234, at 4 (2022).

* * *

In sum, forced arbitration has transferred the rights of workers and consumers to a secretive, closed, and private system designed by corporate interests to evade oversight and accountability. *Id*. at 6.

This Court must decide if the Act applies. Defendant claims that an arbitrator must decide (Motion, p. 10, 12), but the Act bars that practice and places the "Determination of Applicability" of the act in the hands of the federal district court:

An issue as to whether this chapter applies with respect to a dispute shall be determined under Federal law. **The applicability of this chapter to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator**, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement, and irrespective of whether the agreement purports to delegate such determinations to an arbitrator. (9 U.S.C § 402(b) (emphasis added))

The Court must also reject defendant's urging to apply what it claims is Texas law (Motion, p. 13, n.6) to determine arbitrability in light of the Act. "An issue as to whether this chapter applies with respect to a dispute **shall be determined under Federal law**." (9 U.S.C § 402(b) (emphasis added))

Defendant does not deny that it seeks to enforce a "predispute arbitration agreement" regarding a "sexual harassment dispute:"

(1) Predispute arbitration agreement

The term "predispute arbitration agreement" means any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement.

*** 

(4) Sexual harassment dispute

The term "sexual harassment dispute" means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law.

This Complaint therefore falls squarely within the scope of the Act:

Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute. (9 U.S.C ¶ 402(a))

In ruling, this Court must look to the provisions of the Act as well as the strong public policy it embodies. Defendant contends that Ms. Watson's "claims are based on acts that occurred before the enactment of the Act." (Motion, p. 13) The Act provides: "This Act, and the amendments made by this Act, shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act." P.L. 117-90 (March 3, 2022), § 3, 136 Stat. 28. The facts pleaded here demonstrate that, first, the systemic and unrelenting harassment and the corresponding failure of defendant to take action, continued and grew for months after March 3, 2022, and second, that two of the four causes of action expressly arise after March 3, 2022.

As the Fifth Circuit held in *Heath v. Bd. of Supervisors for the S. Univ. & Agric. & Mech. College* 850 F.3d 731 (5th Cir. 2017), such harassment claims are "continuing" because they involve repeated conduct, so the "unlawful employment practice" cannot be said to occur on any particular day. *Id.* at 737 (quoting *AMTRAK v. Morgan* 536 U.S. 101, 115-117 [(2002) 122 S.Ct. 2061, 2073-2074, 153 L.Ed.2d 106, 123-124].)

> As one circuit has helpfully described *Morgan*'s reasoning, a plaintiff's hostile environment claim "is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant," so **"the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim**; nor can a claim expire as to that first act, because the full course of conduct is the actionable infringement." *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006) (emphasis added).

Notably, *Morgan* rejected the view of circuits like ours that had held "the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct." *Morgan, supra*, 536 U.S. at 117-18. *Id.* (emphasis added).

While the Complaint pleads that the problems began as early as 2021 (*See, e.g.*, Complaint, ¶¶ 19-21), as a matter of law the "filing clock" cannot begin running at the first act, because at that point Watson had no claim. Further, the Complaint pleads that the actionable acts of harassment

and the failure of The Blaze to take appropriate actions occurred after March 3, 2022 – including a key incident on March 4, 2022. (*See* Complaint, ¶ 38; *see also, e.g.*, Complaint, ¶¶ 40-62) Defendant proposes to force the arbitration of a dispute that primarily occurred after the protections of the Act were in effect and which, as a matter of law, continued throughout the entire time period of the hostile environment. *Morgan*, *supra*, 536 U.S. at 117 ("[T]he entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

Further, defendant seeks to compel arbitration of causes of actions that did not arise or accrue *at all* until well after March 3, 2022. Two specific causes of action, Count 3: Wrongful Constructive Termination In Violation Of The Texas Commission On Human Rights Act and Count 4: Retaliation In Violation Of The Texas Commission On Human Rights Act, arose and accrued after March 3, 2022, by their own terms. "The Blaze constructively terminated Ms. Watson in the Spring of 2022, or alternatively actively terminated her in or about July 2022 after she complained, through counsel, about Mr. Schaffer's conduct." (Complaint, ¶ 63; *see also* ¶¶ 82-84, 88) These claims did not exist on March 3, 2022. The Act must apply to them.

Defendant fails to address either issue in its brief. To the extent it may argue in reply that the Act is not retroactive, the issue here is not retroactivity. This Complaint, as pleaded, could not have been filed on March 3, 2022. The conduct here was continuous, and separate claims arose only after the Act took effect. Assuming this dispute even falls under the Arbitration Agreement – which, as discussed *infra*, it does not – the most substantial portion of the case and two of the causes of action indisputably arose and accrued only after the Act went into effect. Those claims *cannot* be forced into arbitration. It makes no sense as a practical matter to divide the case in an arbitrary fashion between what happened in the months before and in the many more months afterward and resolve them in separate forums. Moreover, the policy against forcing arbitration of sexual harassment claims is crystal clear – the unequivocal policy today is *not* to force arbitration,

as discussed in detail *infra*. Where there is any doubt or question, as here, the Act requires that the Court construe the facts and law in favor of a resolution by a jury.

Defendant also claims that Ms. Watson's alleged status as an "independent contractor" bars her from the protections of the Act, though the Act applies to any "person alleging conduct constituting a sexual harassment dispute" without regard to their 1099 or W2 status. (9 U.S.C § 402(a)) Even if the law tolerated the sexual and other harassment of vulnerable persons if they hold independent contractor status (which it does not), the facts pleaded here demonstrate that Ms. Watson was no "independent contractor." "Recognizing the circularity in such a definition, the Supreme Court explained that 'when Congress has used the term "employee" without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.'" *Juino, supra,* 717 F.3d at 434. The courts are well aware of the tendency of unscrupulous businesses to attempt to take advantage of independent contractor status through the mischaracterization of employees. That is why Fifth Circuit courts employ an "economic realities/common law control test" to determine whether a party actually is an "independent contractor." *Id.* at 433-435 (citing *Diggs v. Harris Hosp.—Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988) (citation omitted)). Under that analysis, Ms. Watson is an employee in the eyes of the law.

The *Juino* court explained the test:

We have stated that the following factors are pertinent to the analysis:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated [,] *i.e.*, by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"[,] (9) whether the worker accumulates retirement

benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties. *Juino, supra*, 717 F.3d 431, 434-435 (citation omitted).

Here, Ms. Watson pleads facts showing that she was not the kind of free agent who controlled her own working conditions as does a true "independent contractor." The control part of the test is "the most important component." *Ciarrocchi v. INPEX Ams., Inc.,* 2023 U.S.Dist.LEXIS 9878, at *6 (S.D.Tex. Jan. 20, 2023, No. 4:20-CV-03943) (quoting *Deal v. State Farm Cnty. Mut. Ins. Co. of Texas,* 5 F.3d 117, 118-19 (5th Cir. 1993)). "The focus is on who has the right to control the *details and means* of the work." *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex.2002) (emphasis added). As the Court held in *City of Houston v. Smith,* 2015 Tex.App.LEXIS 8750, at *10 (Tex.App.—Houston (1ˢᵗ Dist.), Aug. 20, 2015, No. 01-14-00789-CV):

> An independent contractor is one who, in pursuit of an independent business, undertakes specific work for another using his own means and methods without submitting to the control of the other person as to the details of the work. [citation omitted] In contrast, an "employer controls not merely the end sought to be accomplished, but also the means and details of its accomplishment." *Limestone*, 71 S.W.3d at 312 (citing *Thompson*, 789 S.W.2d at 278).

This was no Internet writer toiling away on her laptop in her apartment across the country, emailing in articles and videos, working without supervision. The Complaint pleads that the show "was taped on-set at The Blaze's studios in Irving, Texas under the direct supervision of The Blaze management and employees." (Complaint, ¶ 17) It pleads that the TSA itself enshrined the kind of close and direct control over her work that characterizes an "employee," not an independent contractor." (Complaint, ¶ 18) She participated in production meetings on site with The Blaze management, which acknowledged its responsibility to address these issues. (Complaint, ¶¶ 38-41) She worked closely with the officers and management of The Blaze. (Complaint, ¶¶ 49, 68) She was indistinguishable in any significant way from an employee.

Ms. Watson submits her declaration in support of this Opposition. (Appendix, Ex. 1) The facts therein track the *Juino* factors. **Factor 1** examines supervision. Ms. Watson worked in-studio, on-set host under the direction of a supervisor, which is common in the industry. (Watson Decl., ¶ 4) The Blaze personnel were involved in all aspects of preparation and production, retaining the final say on both elements. (*Id.*, ¶¶ 4-7) The Blaze owned the *You Are Here* show. (Watson Decl., ¶ 5) The Blaze personnel provided a director and other supervising personnel and maintained full control over the program she hosted. (*Id.*, ¶¶ 4-7) The TSA specified that the "preparation, development, production, performance, marketing, promotion and exhibition of the Programs" were all "determined by Company in its sole discretion." (*Id.*, ¶ 6) The Blaze could approve or disapprove of guests and content. (*Id.*, ¶ 7)

**Factor 2** is the skill required, and Ms. Watson shows there are no special training or education requirements to host. (*Id.*, ¶¶ 4, 8) **Factor 3** examines who provides the equipment and work site, which The Blaze did here. (*Id.*, ¶ 9) She also shows she had to be at The Blaze's studio, at a specific time, for five (5) episodes per week a minimum of forty-eight (48) weeks per year. (*Id.*)

**Factor 4** is the length of time the claimant worked, and here it was three or four years – not a short-term, single-project type of engagement generally describing an "independent contractor." (*Id.*, ¶ 10) **Factor 5** discusses payment, and she was not paid with a lump sum or by the job or individual task but with a monthly payment on or before the 10th day of each calendar month – basically, a regular paycheck. (*Id.*, ¶ 11) **Factor 6** is the method of termination, and that was solely for a material breach of the TSA, indicating a long-term relationship like employment. (*Id.*, ¶ 12) **Factor 7** examines annual leave – it essentially asked whether the worker received vacation, as employees do. Ms. Watson was given four weeks per year of paid vacation under the TSA, like a typical employee. (*Id.*, ¶ 13)

**Factor 8** is whether her job was an integral part of the business of The Blaze, as opposed to her being a specialist with a foreign or unusual skill not typically found in such a business. Her job was integral to the business – producing shows was what The Blaze did. (*Id*., ¶ 14) **Factor 11** addresses the party's intentions regarding her status. Her testimony is that her relationship, which involved going to work at a set place and set time for a regular paycheck, working under the supervision of management, was no different than other employment relationships she had experienced and observed. (*Id*., ¶ 15) She did not experience the Blaze treating her any differently than "employees," and she was under the same rules and expectations as them. (*Id*.) Ms. Watson was not one of the "contributors," people who regularly appeared on The Blaze programs but not on any set schedule and at The Blaze's discretion; her schedule was set by The Blaze was firm and consistent. (*Id*.) As for The Blaze's intentions, they were obvious and improper – The Blaze wanted from Ms. Watson the work of an employee but without giving her the benefits and freedom of an independent contractor. Further, Ms. Watson was represented to the public by The Blaze as a The Blaze media personality, and never as something contingent or "independent," and her picture was on the electronic screen at The Blaze studios as a The Blaze host. (*Id*.)

Ms. Watson has pleaded facts and offered substantial, admissible evidence demonstrating that she was not a mere "independent contractor." To the extent she bases her motion on that status, it fails. Further, the declaration sets forth specific additional facts that entitle her to amend her Complaint, if necessary, on the "independent contractor" issue. As the Court held in *Worrall v. River Shack LLC,* 2023 U.S.Dist.LEXIS 48296, at *18 (N.D.Tex. Mar. 22, 2023, No. 3:22-CV-0392-B):

> However, under the Federal Rules of Civil Procedure, the Court should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994).

In determining whether to allow such amendment, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted). None of those concerns are applicable here.

The Court should not compel arbitration because the Act bars it.

## III.   THE SUBJECT ARBITRATION AGREEMENT DOES NOT COMPEL ARBITRATION OF SEXUAL HARASSMENT LAWSUITS

Even if the Act allowed the forced arbitration of these kinds of claims (which it does not), these claims are outside the scope of the proffered the Arbitration Agreement. A party seeking to compel arbitration under the Federal Arbitration Act ("FAA") must establish that: (1) there is a valid agreement between the parties; and (2) the claims for which arbitration is sought fall within the scope of the arbitration agreement. *See In re Weekley Homes, L.P.,* 180 S.W.3d 127, 130 (Tex.2005). This agreement is unenforceable not only because of the Act, but because sexual harassment fall within the Arbitration Agreement's terms.

The operative portion of the Arbitration Agreement is as follows:

The parties agree that any dispute between them regarding any matter related to or arising out of this agreement (an "Arbitrable Dispute") shall be resolved by binding, confidential arbitration in Dallas, Texas, by a single arbitrator from Judicial Arbitration & Mediation Services, Inc. ("JAMS"), who must be a retired Judge, having served on any federal court located in Texas, or the Dallas superior court, or a higher court of the states of Texas. (Motion APP 015)

At the outset, defendant offers a great deal of older law to the effect that "Federal and state laws strongly favor arbitration." (Motion, p. 6) That may have been true once, but that is no longer true for claims of sexual harassment because the Act sets forth a clear and unequivocal policy

*against* forcing arbitration upon such claimants. All the law about favoring arbitration and presuming its validity has been superseded – the Act appears in the same United States Code title as the FAA, 9 U.S.C., and is of more recent enactment. Presumably, had Congress meant to impose arbitration in the current situation, it could have said so. Instead, the unequivocal statement of the Congress is that compelling arbitration under these circumstances is actively *disfavored*.

And that does not only apply to federal law. The states, every single one of them including Texas, agrees:

> **In light of these concerns, a coalition of state attorneys general—from all 50 states, the District of Columbia, and several U.S. territories—**have written Congress in support of ending forced arbitration in workplace disputes involving claims of sexual harassment. As this bipartisan coalition notes, ''[e]nding mandatory arbitration of sexual harassment claims would help to put a stop to the culture of silence that protects perpetrators at the cost of their victims.'' *H.R. Rep*. No. 117-234, at 11 (2022) (emphasis added)

It is under that harsh light of disfavor that the Court should approach this Arbitration Agreement. The first thing that becomes apparent is that "sexual harassment" is not expressly listed as an arbitrable claim. Such a claim is neither exotic not rare such that it might not be mentioned. Sexual harassment could have easily been listed as one of the covered disputes in The Blaze's "TALENT ENGAGEMENT AGREEMENT - STANDARD TERMS AND CONDITIONS" form, which it drafted. (Watson Decl., ¶ 16) That a provision that purports to defeat what the United States and every single state considers an important right – a jury trial – is not expressly mentioned in the text but is now asserted to be covered raises the question of good faith and fairness. Fairness to and justice for individual claimants is at the core of Congress's intent in enacting the Act. *H.R. Rep*. No. 117-234, at 3 (2022) ("Because arbitration lacks the transparency and precedential guidance of the justice system, there is no guarantee that the relevant law will be applied to these disputes or that fundamental notions of fairness and equity will be

upheld in the process."); *see also H.R. Rep*. No. 117-234, at 4, 6. Strictly construing the language of a buried, boilerplate provision against non-drafting individuals who do not have the benefit of two large law firms to advise them is directly contrary to the new and unequivocal public policy set forth by the Act.

The question therefore must be whether the text of the Arbitration Agreement itself – "regarding any matter related to or arising out of this agreement" – should be construed to include sexual harassment claims. Again, there is no express inclusion of sexual harassment claims. To grant the Motion, the Court must determine – under the <u>new</u> policy set forth by the Act – whether sexual harassment claims are covered by this boilerplate language that makes no mention of them.

They are not. The wrong at issue does not arise from or because of the TSA. The duties that Ms. Watson sues upon are not found in the TSA. They are creatures of and arise from statute, and their protections are equally effective for persons with and without contracts. While the law for other kinds of claims might still require a broad and liberal interpretation of the contractual language, that is no longer true for sexual harassment claims thanks to the Act. Rather, the language should be, as any ambiguous contract language is, strictly construed ***against*** the drafter. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62-63, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *Rhyan v. DW Direct, Inc.,* 2020 U.S.Dist.LEXIS 193625, at *10 (S.D.Tex. Oct. 19, 2020, No. 4:19-CV-3599). The text, read in the manner most favorable to the party resisting forced arbitration as required by the Act, is not so broad as to include sexual harassment claims. For that reason as well, this dispute cannot be forced into arbitration

## IV.     IF ARBITRATION IS COMPELLED, THE PROPER COURSE OF ACTION IN THAT INSTANCE WOULD BE TO STAY THE MATTER

Defendant seeks a dismissal of the action, but even if the Court determines that this matter should be subject to binding arbitration, a dismissal is neither required nor wise. The law does not

require dismissal. In fact, the operative statute directs a *stay*. 9 U.S.C. § 3 ("Stay of proceedings where issue therein referable to arbitration") provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement**, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement**, providing the applicant for the stay is not in default in proceeding with such arbitration. (Emphasis added)

Further, it is not prudent or economical to dismiss the suit because a judgment must be entered following arbitration regardless. It would require duplicative effort with no benefit for anyone. The Court should, if it compels arbitration, merely stay the case.

## V.   TO THE EXTENT THAT DEFENDANT BRINGS THIS MOTION UNDER FRCP 12(b)(1) OR (6), IT SHOULD BE DENIED

Footnote 1 of both the notice of motion and the supporting brief cite to Rule 12(b)(1), "lack of subject-matter jurisdiction," and Rule 12(b)(6), "failure to state a claim upon which relief can be granted," as alternate bases for this Motion. However, defendant fails to offer argument or briefing regarding either of these Rule 12 sub-parts, apparently basing its Motion entirely on the FAA. (Motion, p. 1) The defense arguments that fail in support of the Motion based on the FAA likewise fail if asserted under Rule 12(b)(1) and Rule 12(b)(6). At the least, the Motion fails to explain how these sub-parts would operate differently or lead to a different result. If defendant so contends, then it has failed to apprise Ms. Watson of that differing application such that she could meaningfully address it in opposition, as well as the Court so that the Court could rule upon it.

A Rule 12(b)(6) motion must fail because the facts that Ms. Watson pleads fully state each cause of action. Defendant makes no argument that Ms. Watson states no claim. Defendant's additional facts (Motion, p. 3-6) only impliedly argue that the pleaded facts are not true, but a Rule 12(b)(6) motion does not test the truth of the allegations, only their sufficiency to set forth a claim.

As the Court held in *Martinez v. Bryson,* 2021 U.S.Dist.LEXIS 13879, at *4-5 (N.D.Tex. Jan. 26, 2021, No. 3:20-CV-1840-B):

> In considering a Rule 12(b)(6) motion to dismiss "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

> ***

> In order to survive a motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Dismissal under Rule 12(b)(6) in only appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). A jury could find in favor of Ms. Watson under the facts pleaded in her Complaint. Further, her attached declaration offers additional facts that she could plead if amending. Additional facts relevant to the merits beyond those are available, though the lack of any argument in the Motion regarding Rule 12(b)(6) makes them difficult to specify in opposition. If the Court is inclined to grant this Motion on the grounds of 12(b)(1) or 12(b)(6), it should allow leave to amend.

The additional facts offered by defendant along with the Motion should be disregarded in the context of Rule 12(b)(6), even if they are appropriate in the context of a motion to compel arbitration. The extensive additional facts outside the pleadings regarding the merits (Motion, p. 3-6) should not have been included in the Motion at all. Defendant does not make clear why it did

so. Such facts, including documents and assertions of defendant's management that are meant to support the conclusion that "Plaintiff's own statements, emails and text messages reveal that her claims are untrue" (Motion, p. 1), do not relate to the procedural question of the applicability of the Arbitration Agreement. Defendant's reason might be to attempt to get its version of the facts into the public record before the case is sent off to arbitration, where it will be hidden from public scrutiny. (Motion, p. 2 (quoting TSA: "The occurrence of such arbitration proceedings shall be maintained as confidential information of each of the parties.").) It would be improper to assert these alleged facts here for that purpose, but the alternative explanation is that defendant seeks some sort of ruling by the Court using these alleged facts and, therefore, upon the merits.

Adding exhibits outside the scope of the pleadings can convert a Rule 12(b)(6)[2] motion into a Rule 56 motion for as summary judgment. (FRCP 12(d)). The Court should not do so here. Conversion requires that "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. This Motion provides no notice of the any conversion other than the offering of a variety of materials from outside the Complaint. There is no notice of exactly what such a motion would entail or what issues Ms. Watson must address.

Of course, here the Court would have to deny the converted Rule 56 motion on the merits regardless. The reality is that summary judgment is not appropriate in a sexual harassment suit at the pleading stage with no prior amendment aside. Rule 56(a) requires that "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Here, the asserted evidence does not do so. The extended factual assertion section merely suggests that, if believed, the harassment was not as pervasive as Ms. Watson claims.

---

[2] A summary judgment conversion must be based on a Rule 12(b)(6) motion ((FRCP 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."))

(Motion, p. 3-6) And, as discussed above, as far as the independent contractor issue, the facts Ms. Watson alleges support that she was actually an employee. Ms. Watson, in an abundance of caution, further adds additional facts in her concurrent declaration that effectively converts the facts as pleaded in the Complaint into admissible evidence related to the independent contractor issue. But if the conversion got so far, the Court should allow Ms. Watson time to obtain sworn evidence via discovery to prove the facts alleged in her Complaint, and additional facts relevant to the claim, including facts beyond those specified here and in her declaration.

### VI.    <u>DEFENDANT'S CLAIM FOR ATTORNEY'S FEES SHOULD BE DENIED</u>

Defendant demands attorney's fees should this Motion succeed. It offers no authority for the proposition; in fact, the authority is to the contrary. At the outset, the Act gives Ms. Watson the absolute right – in fact, the duty – to have any claim of compelled arbitration resolved here in court. (9 U.S.C ¶ 402(b)) The underlying assumption of the Motion is that this was somehow improper under the TSA (Motion, p. 16), but what is mandated by law cannot be the basis for a punitive fees award. Furthermore, the TSA does not, under any construction, empower *this Court* to impose fees. (Motion, p. 2, 16 (citing TSA: "The filing and prosecution by any Party in any court of an action alleging an Arbitrable Dispute is a breach of this Agreement, and the non-breaching party shall be entitled to recover damages for each breach through an arbitration pursuant to this paragraph."))

It is a prevailing party that may be awarded fees. The prevailing party is "the successful party on the merits of the case." *See Taylor Elec. Servs. Inc., supra,* 167 S.W.3d at 532. Even if defendant succeeds on this Motion, it has not succeeded on the merits because Ms. Watson's case will go on to resolution in a different forum. Defendant will not be a prevailing party and therefore cannot be awarded fees. *Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air,*

*LP* (Tex.Ct.App. 2017, pet. denied) 520 S.W.3d 145, 170 ("[W]e must look to the judgment, not preliminary verdicts or rulings, as the critical component of our analysis regarding whether a party "prevailed" in a suit and is thus entitled to attorney's fees."). *Carhon Energy Grp., LLC v. Cliveden Petro. Co.,* 2023 U.S.Dist.LEXIS 6016, at *16 (S.D.Tex. Jan. 12, 2023, No. H-22-170) ("The Court looks to the judgment, not preliminary verdicts or rulings, as the critical component of our analysis regarding whether a party "prevailed" in a suit and is thus entitled to attorney's fees.") Even if this case was to be dismissed in order to send it to arbitration, defendant would not be a prevailing party in that it would have only succeeded in an interim forum dispute rather than obtained its ultimate objective in the litigation. This claim should be denied should the Court grant decide to other relief.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## VII.   <u>CONCLUSION</u>

The Court should deny the Motion in its entirety.

Should the Court compel arbitration, it should stay this case so that judgment may be entered upon completion of arbitration.

Should the Court be inclined to grant the Motion in whole or in part, it should first grant Plaintiff leave to amend.


Dated: April 6, 2023                    Respectfully submitted,

SCHLICHTER, SHONACK & KEETON, LLP

By: */s/ Kurt A. Schlichter*
Kurt A. Schlichter
State Bar No. 24104610
kas@ssandkattorneys.com
2381 Rosecrans Ave., Ste. 326
El Segundo, California 90245
Phone: (310) 643-0111
Fax: (310) 643-1638

SCHEEF & STONE, LLP

James A. Pikl
State Bar No. 16008850
jim.pikl@solidcounsel.com
2600 Network Blvd., Ste. 400
Frisco, Texas 75034
Phone: (214) 472-2100
Fax: (214) 472-2150

ATTORNEYS FOR PLAINTIFF
SYDNEY WATSON

///

///

///

///

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 10th day of April, 2023, the undersigned provided a copy of *PLAINTIFF SYDNEY WATSON'S BRIEF IN SUPPORT OF HER RESPONSE TO DEFENDANT BLAZE MEDIA LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION* to counsel in this case via the U.S. Northern District of Texas ECF filing system as follows:

Celeste R. Yeager
Courtney E. Jackson
LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX 75201
*cyeager@littler.com*
*cejackson@littler.com*
(214) 880-8100 (Telephone)
(214) 880-0181 (Facsimile)

Jordan W. Cowman
GREENBERG TRAUIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
*Jordan.cowman@gtlaw.com*
(214) 665-3600 (Telephone)
(214) 665-5952 (Facsimile)

*/s/ James A. Pikl*
James A. Pikl