UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SYDNEY WATSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-0279-B |
| | § | |
| BLAZE MEDIA LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Blaze Media LLC ("Blaze")'s Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration (Doc. 8). Because a federal statute prevents Blaze from compelling arbitration, the Court **DENIES** Blaze's Motion.

### I.

### BACKGROUND

In this case, Plaintiff Sydney Watson alleges she faced workplace harassment while working for Blaze. The parties' relationship began in May 2021 when Watson and Blaze entered a Talent Services Agreement (the "Agreement"). Doc. 9, Mot. Br., 1–2; Doc. 10, Mot. App., 7–18. Blaze hired Watson to cohost *You Are Here* ("YAH"), an internet-based show focused on politics and culture. Doc. 1, Compl., ¶¶ 12, 14. She and her cohost Elijah Schaffer began production of YAH in September 2021. *Id.* ¶ 13.

Although the show was initially successful, the relationship between Watson and Schaffer quickly began to sour. *Id.* ¶ 19. Watson alleges, "Schaffer's persona on the show became increasingly aggressive and soon began to veer into outright misogyny." *Id.* In addition, Schaffer selected multiple YAH guests whom Watson viewed as "grossly misogynistic." *Id.* ¶¶ 20–21. One

of these guests shouted at Watson during the show for reading a question from a viewer. *Id.* ¶ 21. Schaffer continued to book similar guests without consulting Watson. *Id.* ¶ 24. During this time, Watson felt "she was . . . the designated punching bag for the sexist guests and [Schaffer]." *Id.* ¶ 25. Schaffer also "endlessly reference[d] sex" on the show. *Id.* ¶ 34. And, due to Schaffer's behavior, YAH's audience would routinely harass Watson with "grossly sexist" and "anti-Jewish" comments. *Id.* ¶¶ 25–32.

In January 2022, Watson began apprising Blaze management to Schaffer's actions weekly. *Id.* ¶ 49. Watson experienced significant vertigo and had to sit out of shows because of the stress caused by Schaffer's conduct. *Id.* ¶ 37. On March 4, 2022, she told Schaffer and other Blaze employees, including Blaze president Gaston Mooney, that this behavior was "making it impossible for her to do her job." *Id.* ¶ 38. After the meeting, Blaze management promised to address the issues. *Id.* ¶ 39.

Despite this promise, the issues continued. Things came to a head on April 7, 2022. Schaffer tweeted that he hoped Watson would "sleep with" a certain conservative media personality. *Id.* ¶ 43. Watson told Blaze that she could not continue and stopped participating in YAH. *Id.* ¶¶ 45, 51. Blaze officially put YAH on hiatus in May 2022. *Id.* ¶ 55. In the following months, Schaffer continued to make disparaging comments about Watson, including claiming that she tried to convince his wife to divorce him. *Id.* ¶¶ 59, 61–62. Watson alleges Blaze either "constructively terminated Ms. Watson in the Spring of 2022, or alternatively actively terminated her in or about July 2022 after she complained, through counsel, about Mr. Schaffer's conduct." *Id.* ¶ 63.

On February 8, 2023, Watson sued Blaze in this Court for (1) sex and religious discrimination in violation of Title VII, (2) sex and religious discrimination in violation of the Texas Commission on Human Rights Act ("TCHRA"), (3) wrongful constructive termination in violation of the TCHRA, and (4) retaliation in violation of the TCHRA. *Id.* ¶¶ 71–89. Blaze moved to compel arbitration under the parties' Agreement. *See* Doc. 8, Mot. Compel.

## II.

## LEGAL STANDARDS

A.  *The Federal Arbitration Act*

"When a party who has agreed to arbitrate a dispute instead brings a lawsuit, the Federal Arbitration Act entitles the defendant to file an application to stay the litigation." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1710–11 (2022) (citing 9 U.S.C. § 3). And under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, the defendant may also petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement." *See* 9 U.S.C. § 4.

Determining whether the parties agreed to arbitrate a dispute "involves two analytical steps. The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this claim* is covered by the arbitration agreement." *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Then, "[i]f the court finds that the parties agreed to arbitrate, the court typically must consider whether any federal statute or policy renders the claims nonarbitrable." *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302 (5th Cir. 2021) (internal quotation omitted).

B.    *Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act*

Congress enacted one such statute on March 3, 2022. The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. §§ 401–02, carves out sexual assault and sexual harassment claims from the FAA. Specifically, the EFAA provides,

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). The EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4). If a plaintiff alleges a sexual harassment dispute, a predispute arbitration agreement is unenforceable as to "the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute." *Johnson v. Everyrealm, Inc.*, 2023 WL 2216173, at *18 (S.D.N.Y. Feb. 24, 2023). Whether the EFAA applies to a dispute is a question for the Court. 9 U.S.C. § 402(b).

### III.

### ANALYSIS

The parties' Agreement provides, "any dispute between [the parties] regarding any matter related to or arising out of this [A]greement . . . shall be resolved by binding, confidential arbitration." Doc. 10, Mot. App., 15. Blaze moves to compel arbitration on the basis of this arbitration agreement. Doc. 8, Mot. Compel. Watson argues the EFAA prevents Blaze from

compelling arbitration because her case relates to a sexual harassment dispute. Doc. 12, Resp., 4–12.

The parties agree that they entered an arbitration agreement. And Watson's claims are covered by that agreement. The only question is therefore "whether [the EFAA] renders the claims nonarbitrable," *see Polyflow*, 993 F.3d at 302, or, more precisely, renders the arbitration agreement unenforceable against Watson, *see* 9 U.S.C. § 402(a). Blaze argues the EFAA does not apply for two reasons: (1) Watson's sexual harassment claims accrued before the EFAA was enacted and (2) Watson lacks statutory standing to bring her sexual harassment claims. Doc. 9, Mot. Br., 13–14; Doc. 14, Reply, 4–8. Neither argument is persuasive.

A.   *Watson's Title VII Sexual Harassment Claim Accrued After the EFAA Was Enacted*

The EFAA is not retroactive, so it applies only when a plaintiff's sexual harassment claim accrued on or after March 3, 2022, the date the EFAA was signed into law. *Johnson*, 2023 WL 2216173, at *10 (citing Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022) and collecting cases). According to Blaze, Watson could have brought her claims "as early as December 3, 2021." Doc. 9, Mot. Br., 14. Thus, Blaze argues, Watson's "dispute or claims accrued prior to March 3, 2022." *Id.* Because Watson alleges a continuing violation under Title VII, the Court disagrees.[1]

Watson alleges, "[Blaze] creat[ed] and tolerat[ed] a hostile work environment and allow[ed] sexual harassment, retaliation, and discriminating [sic] against her on the basis of her sex and religion." Doc. 1, Compl., ¶ 1. Federal common law governs when a Title VII hostile work environment claim accrues. *See Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech.*

---

[1] If a plaintiff alleges a sexual harassment dispute, a predispute arbitration agreement is unenforceable as to "the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute." *Johnson*, 2023 WL 2216173, at *18. Thus, the Court need not decide whether Watson's TCHRA sexual harassment claim accrued on or after March 3, 2022.

*Coll.*, 850 F.3d 731, 739–40 (5th Cir. 2017). A hostile work environment claim is a "continuing violation." *Id.* at 737. As such, it is not based on any particular act; instead, the actionable infringement is the full course of conduct. *Id.* Thus, for purposes of the statute of limitations, a hostile work environment claim, "as a 'single unlawful employment practice' accrues within the limitations period so long as some of the continuous conduct occurred during that time." *See id.* at 740 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–17 (2002)). Similarly, courts have concluded that, for purposes of the EFAA, hostile work environment claims could accrue on the date of the last act contributing to the violation. *See, e.g.*, *Olivieri v. Stifel, Nicolaus & Co.*, 2023 WL 2740846, at *6 (E.D.N.Y. Mar. 31, 2023); *Barnes v. Festival Fun Parks, LLC*, 2023 WL 4209745, at *11 (W.D. Pa. June 27, 2023).

Blaze cites no authority to suggest that the "continuing violation" doctrine should not apply here. Watson alleges Schaffer continued to contribute to the hostile work environment after March 3, 2022. For example, on April 7, 2022, Schaffer posted his tweet suggesting Watson sleep with another media personality. Doc. 1, Compl., ¶ 43. Thus, because the last act contributing to the violation was after March 3, 2022, Watson's Title VII sexual harassment claim accrued after March 3, 2022. *See Heath*, 850 F.3d at 740. The EFAA therefore applies to her case. *See Johnson*, 2023 WL 2216173, at *10, 18.

B.   *Watson Has Plausibly Pleaded That She Is an Employee*

Blaze argues that the EFAA does not apply to Watson, and the Court must therefore compel arbitration. Doc. 9, Mot. Br., 14. Blaze presents this argument in three steps. First, Blaze argues Watson is an independent contractor, not an employee. *Id.* Then Blaze reasons that, because Watson is not an employee, she does not have standing to sue for sexual harassment

under Title VII or the TCHRA. *Id.* Finally, Blaze contends that because Watson does not have standing under Title VII or the TCHRA, the EFAA does not protect her. *Id.* The Court disagrees.

Several aspects of Blaze's argument are not fleshed out in its briefing. Resolving the Motion requires addressing two of them. First, Blaze does not clarify what it means by "standing." *Id.* Blaze argues Watson "does not have standing to sue under Title VII or the TCHRA" because she was an independent contractor. *Id.* The Court understands this as a reference to "statutory standing," not Article III standing. Statutory standing—"[t]he question of whether a claimant 'falls within the class of plaintiffs whom Congress has authorized to sue under' a particular statute"—is not a jurisdictional requirement. *See, e.g., Carter v. H2R Rest. Holdings, LLC*, 2017 WL 4174805, at *8–9 (N.D. Tex. Aug. 1, 2017) (Horan, Mag. J.) (quoting *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)), *report and recommendation adopted*, 2017 WL 4174800 (N.D. Tex. Sept. 19, 2017) (Godbey, J.). Instead, statutory standing is an element of the claim. *Beatriz Ball, L.L.C. v. Barbagallo Co.*, 40 F.4th 308, 316 n.6 (5th Cir. 2022) (per curiam); *accord HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 339 (5th Cir. 2021) ("[A] motion to dismiss for lack of statutory standing is analyzed under Rule 12(b)(6), not Rule 12(b)(1)."). Thus, employee status is not a jurisdictional requirement in a Title VII case; rather, it is an element of a Title VII claim. *See, e.g., Carter*, 2017 WL 4174805, at *8–9.

Second, Blaze does not address how Watson's statutory standing under Title VII and the TCHRA affects the applicability of the EFAA. Blaze simply argues that to be protected under the EFAA, Watson must have statutory standing to bring her sexual harassment claims. Doc. 9, Mot. Br., 14. This requirement is not explicit in the statute. Under the EFAA, an arbitration agreement is unenforceable as to "a case which is filed under Federal, Tribal, or State law and

relates to" "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. §§ 401(4), 402(a). For Blaze's argument to work, the EFAA must incorporate a plausible pleading requirement akin to Federal Rule of Civil Procedure 8(a)(2), or, at a minimum, a requirement that the plaintiff plausibly allege statutory standing. Doc. 9, Mot. Br., 14.

This implicit premise, which Blaze does not brief, raises difficult questions of statutory interpretation. There is some persuasive authority for it. Most notably, Judge Paul Engelmayer of the Southern District of New York held, in a well-reasoned opinion, "the term 'alleged' as used in § 401(4) is best read to implicitly incorporate the plausibility standard." *See Yost v. Everyrealm, Inc.*, 2023 WL 2224450, at *14–18 (S.D.N.Y. Feb. 24, 2023). The Court ultimately need not decide the question in this case, however, because Watson has plausibly pleaded statutory standing under Title VII.

Title VII protects employees but not independent contractors. *Diggs v. Harris Hosp.–Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988). Thus, to recover under Title VII, a plaintiff must ultimately prove that she was an employee. *See id.* "An 'employee' under Title VII is defined in pertinent part as 'an individual employed by an employer.'" *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013) (quoting 42 U.S.C. § 2000e(f)). "The Supreme Court has noted that this definition 'is completely circular and explains nothing.'" *Id.* (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)).

Rather than relying on contractual labels, the Fifth Circuit "appl[ies] the 'economic realities/common law control test,' . . . [to] determine[e] whether a party is an employee or an

independent contractor." *See id.* This test looks to eleven factors[2] to illuminate two questions. *Id.* First, are "putative employees, as a matter of economic reality, . . . dependent upon the business to which they render service?" *Id.* (internal quotation omitted). And second, to what extent does "the one for whom the work is being done ha[ve] the right to control the details and means by which the work is to be performed?" *Id.*

At the pleading stage, however, a plaintiff need only allege facts that could support the conclusion that she is an employee. *See McCorvey v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 2016 WL 8904949, at *16 (W.D. Tex. Dec. 21, 2016) (finding the plaintiff "need not have pled sufficient facts to satisfy the 'economic realities/common law control test'" to state a claim and noting the test is more appropriately applied at summary judgment); *see also Ferguson v. Tex. Farm Bureau Bus. Corp.*, 2018 WL 1392703, at *3 (W.D. Tex. Mar. 20, 2018) (finding the plaintiff plausibly alleged he was an employee under the Fair Labor Standards Act because he "alleged a number of facts that could support the conclusion that he is an employee").

Here, Watson has alleged sufficient facts to plausibly plead she was an employee of Blaze. Watson taped YAH at Blaze's studios under the direct supervision of Blaze management and employees. Doc. 1, Compl., ¶ 17. Her work at Blaze was "subject to [Blaze's] direction and control." *Id.* ¶ 18. And Blaze directed YAH's production schedule and approved its content. *Id.*

---

[2] The factors are
(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated [,] *i.e.*, by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"[,] (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Juino*, 717 F.3d at 434–35.

¶ 16. Viewing these facts in the light most favorable to Watson, the Court concludes that she has plausibly pleaded she was a Blaze employee. *See Juino*, 717 F.3d at 434–35. Thus, even if the EFAA implicitly incorporates the plausibility standard, Watson has plausibly pleaded statutory standing under Title VII. *See* 9 U.S.C. §§ 401(4), 402(a). Because she has done so, the parties' arbitration agreement is not valid or enforceable with respect to this case. *See id.* § 402(a).

## IV.

## CONCLUSION

As explained above, the EFAA applies because Watson brings a sexual harassment dispute covered by the EFAA and that claim accrued after the EFAA was enacted. For these reasons, Blaze cannot enforce the parties' arbitration agreement against Watson. Blaze's Motion to Compel Arbitration (Doc. 8) is therefore **DENIED**. Blaze must file an answer or otherwise respond to Watson's Complaint (Doc. 1) within **FOURTEEN (14) DAYS** of this Order.

**SO ORDERED.**

**SIGNED: August 3, 2023.**

_____
**JANE J. BOYLE
UNITED STATES DISTRICT JUDGE**